Allen, J.
 

 The question of substance involved in this case relates to the intention of the testator, Charles Albright, as to the disposition of the real estate covered by item 6 of the will, after the death of his son Isaac. It is the contention of the plaintiffs in error that the language of the
 
 *673
 
 entire will shows that the testator intended that the remainder interest should vest in the natural child or children of his son Isaac, and that if Isaác had no such children the remainder interest should vest .in the heirs at law of Isaac Albright, of the Charles Albright blood.
 

 It is the contention of the defendants in error that the testator intended that the remainder should vest in whatever legal heirs Isaac Albright had at his death, that by the proceedings of adoption Jesse Albright became the child and legal heir of Isaac and Yetta Albright, as if begotten in lawful wedlock, and that at the death of Isaac Albright, Jesse Albright was his child, his heir at law, and the legal representative of the Albright family, and that hence the title in fee simple to the land in question vests in Jesse Albright under the will.
 

 The statute under which Jesse Albright was adopted is to be found in Sections 3139 and 3140 of the Revised Statutes, which read as follows:
 

 Section 3139. “When the foregoing provisions are complied with, if the court is satisfied of the ability of the petitioner to bring up and educaté the child properly, having reference to the degree and condition of the child’s parents, and the fit-. ness and propriety of such adoption, it shall make an order setting forth the facts, and declaring that, from that date, such child, to all legal intents and purposes, is the child of the petitioner, and that its name is thereby changed.”
 

 Section 3140. “The natural parents, except when such child is adopted under the provisions of Section 3137a, shall, by such order be divested of all
 
 *674
 
 legal rights and obligations in respect to the child and the child be free from all legal obligations of obedience and maintenance in respect to them. Such child shall be to all intents and purposes the child and legal heir of the person so adopting him or her, entitled to all the rights and privileges and subject to all the obligations of a child of such person begotten in lawful wedlock; but on the decease of such person and the subsequent decease of such adopted child without issue, the property of such adopting parent shall descend to his or her next of kin, and not to the next of kin of such adopted child.”
 

 The statute as amended in 1921, and in force at the time of the death of Isaac Albright in 1925, is to be found in Section 8030 of the General Code, the pertinent portion of which reads as follows:
 

 “* * * Except when such child is adopted under the provisions of Sections 8026 and 8027, upon such decree of adoption the natural parents of the child, if living, shall be divested of all legal rights and obligations due from them to the child or from the child to them; and the child shall be free from all legal obligations of obedience or otherwise to such parents; and the adopting parent or parents of the child shall be invested with every legal right in respect to obedience and maintenance on the part of the child as if said child had been born to them in lawful wedlock; and the child shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance and the rights of inheritance to real estate, or to the distribution of personal estate on the death of such adopting parent or parents as
 
 *675
 
 if born to them in lawful wedlock; provided, such child shall not be capable of inheriting property expressly limited to the heirs of the body of the adopting parent or parents; and provided also, on the death of the adopting parent or parents and the subsequent death of the child so adopted, without issue, the property of such deceased parent or parents shall descend to and be distributed among the next of kin of said parent or parents and not to the next of kin of the adopted child; and provided, also, if such adopting parent or parents shall have other child or children, then the children by birth and adoption shall, respectively, inherit from and through each other as if all had been children of the same parents born in lawful wedlock. Nothing in this act shall be construed as debarring a legally adopted child from inheriting property of its natural parents or other kin.”
 

 The defendant in error contends that, in so far as the adoption established a status of relationship, the sections of the Revised Statutes apply hére. However, he concedes in his brief that as to the status of inheritance created by the adoption the amended statute, namely, Section 8030, General Code, does apply.
 

 The court below decided that the land passed to Isaac Albright, following the reasoning in the case of
 
 Smith
 
 v.
 
 Hunter, Trustee,
 
 86 Ohio St., 106, 99 N. E., 91, a decision of this court which held that where the devise of real estate in a will is to a trustee to pay the income thereof to the testator’s daughter for life, with remainder after the death of that person to her “heirs at law,” an adopted child of the testator’s daughter takes under the
 
 *676
 
 will. However, in the case of
 
 Smith
 
 v.
 
 Hunter,
 
 the will construed employs the words “heirs at law” instead of the words “child” and “children.” Also the Albright will expressly qualifies the devise over to Isaac’s “legal representatives” with the phrase “of the Albright family.” Now the term “heir at law” is essentially a legal term, and applies to those persons who have certain legal rights under the statutes of descent and distribution. It signifies, in its strict and technical import, the person or persons appointed by law to succeed to the estate in case of intestacy. 2 Blackstone’s Commentaries, 201. As the will in
 
 Smith
 
 v.
 
 Hunter
 
 specified that the remainder interest in the property in question should pass to the “heirs at law” of the life tenant, and as the statute appointed adopted children to succeed to the estate of their adopting parents in case of intestacy, this court was undeniably correct in holding that under that record the term “heir at law” included adopted children.
 

 The term “child” or “children,” on the other hand, has both a legal meaning and an age-old lay meaning. It may be conceded that either of these terms would, if used in certain contexts, include adopted children under either Sections 3139 and 3140, Revised Statutes, or Section 8030, General Code. However, as given by Webster, one of the first definitions of the meaning of the term is:
 

 “A son or a daughter; a male or female descendant in the first degree; the immediate progeny of human parents; in law, legitimate offspring. ’ ’
 

 The question before us herein is whether in his will Charles Albright used the word “child” in
 
 *677
 
 the legal sense, meaning to include both natural children and persons who had the status of natural children under the statute, or in the ordinary sense in which it is generally employed in common speech, as meaning only issue of the body. In deciding this question,
 
 Smith
 
 v.
 
 Hunter, supra,
 
 cannot control because the term “child” was not the term upon the use of which the will there construed turned.
 

 We agree with the contention of the defendant in error that Sections 3139 and 3140, Revised Statutes, place the adopted child upon a high plane among the other states of the Union. Also under this statute as amended, the child is invested with every legal right, privilege, obligation, and relation in respect to education, maintenance, and rights of inheritance to real estate or distribution of personal estate on the death of the adopting parent or parents as if born to them in lawful wedlock, and this court has recently enforced this statute with respect to such inheritance rights.
 
 Surman
 
 v.
 
 Surman,
 
 114 Ohio St., 579, 151 N. E., 708. Sections 3139, 3140, Revised Statutes, however, did not give to an adopted child the same rights of inheritance to real estate or to distribution of personal estate in the property of an ancestor of the adopting parent as if he had been born to the adopting parents in lawful wedlock. This was the specific holding in
 
 Phillips, Ex’r.,
 
 v.
 
 McConica, Guardian,
 
 59 Ohio St., 1, 51 N. E., 445, 69 Am. St. Rep., 753, which held in paragraph 4 of the syllabus that “an adopted child is enabled, by Section 3140, Rev. St., to inherit from its adopter, but not, through him, from his ancestors.”
 

 
 *678
 
 This decision is still law in this state. Moreover, this decision applies directly to the statute under which Jesse Albright was adopted, namely, to Section 3140, Revised Statutes.
 

 The difficulty of the defendants in error in this case seems to be that they view the proposition from the standpoint of Isaac Albright instead of from the standpoint of Charles Albright. While the statute created in Jesse Albright broad rights as to inheritance of property from his relationship to Isaac and Yetta Albright, it did not change the course of blood and it did not alter the relationr ship of Jesse Albright to Charles Albright, the testator. Even under the provisions of the statute, if the case were one of intestacy, Jesse Albright would be merely a stranger so far as Charles Al-bright’s estate was concerned.
 

 This case, however, is not one of intestacy. It involves a deliberate devise of real estate, and the same rules of construction prevail as against the adopted child as would prevail against a natural child. If the testator left a will which excluded the natural child of his son Isaac he would be within his rights in so doing, and the question before us is whether in this instrument the testator did exclude persons not of the blood of his own family.
 

 In other words, we have. not to construe the statute, but to construe the will and to decide what the testator meant to accomplish therein.
 

 Looking to the will, we observe that in item 3 the testator gives to his son John Albright, during his life, a certain farm and directs that the farm vest in fee simple at John’s death in the
 
 *679
 
 heirs of the said John Albright. In item 4 he devises a farm to his son Jacob Albright, and directs that at Jacob’s death this farm vest in fee simple in his children.
 

 These two items, item 3 and item 4, are emphasized by the defendants in error as an evidence of the fact that the testator used the words “children” and “heirs” interchangeably, and if these were the only phrases which indicated his meaning they would be cogent in favor of Jesse Albright, for
 
 Smith
 
 v.
 
 Hunter, supra,
 
 held that the term “heir” did include adopted child. However, the word “children”' is repeatedly used in this will, in context which shows that it refers to the natural children of the sons of the testator. Charles Al-bright had four sons, John, Jacob, David, and Isaac. At the time of the execution of the will David was dead, but he had left two. natural children then living. John, Jacob, and Isaac, sons of Charles Albright, were then living. Jacob Albright, at the time of the execution of the will, had four natural children living. John Albright, at the time of the execution of the will, had three natural children living. Isaac Albright, although married, had no children. All of these facts were known to Charles Albright at the time of the execution of his will, and evidently when he repeats the word “children” throughout these items, he refers to living children of the blood.
 

 There is a presumption that words used in a will are used in their primary and ordinary sense. It is generally held that when a testator uses the word “child” he means a natural child, unless the context clearly shows that he means to use the
 
 *680
 
 term in a sense including adopted as well as natural children; This is particularly the fact when the testator speaks, not of his own children, but of the children of other persons. ' 28 Ruling Case Law, p. 252, states the rule as follows:
 

 “There are numerous decisions to the effect that a testator who by will makes provision for his own fchild or children’ by that designation should be held to have included an adopted child, since he is under obligation in morals if not in law to make provision for such child. If, however, a will makes provison for a ‘child or children’ of some other person than the testator, the adopted child of such person is not included, unless other language of the will makes it clear that it was so: intended. In the absence of circumstances tending to show , that the testator anticipated the adoption, or knew that it had already taken place, and therefore probably intended to treat the person adopted as a possible beneficiary, the decisions- generally exclude the adopted child from the benefit of the will. A limitation in a will, -to a child or children, or conditioned upon the survivorship of a child or children, is not deemed to include an adopted child, where the grantor or testator is a stranger to the adoption.”
 

 . Under this doctrine Jesse Albright would be excluded from item 6 of the will. And when we consider that in item 4 of the will Charles Al-bright speaks of the children of his son Jacob, four of whom were then living, that in item 5 he speaks of the children of his son David Albright, two of whom were then living, and that he constantly speaks of the children of his sons, evidently desig
 
 *681
 
 nating their living offspring of the blood, it is apparent at least that nothing in the will indicates that the testator was including in the term “ children ” a possible adopted child who was not even in being at the time of the execution of the will. •
 

 We might not consider these circumstances alone conclusive, however, if they were not coupled with the use of another remarkable phrase. In item 5 of the will, after devising a farm to the children of his deceased son David and providing that this farm at their death should vest in fee simple in their children, the testator then directs, that if they should die leaving no children, the farm shall go to their “legal representatives of the Albright family.” This phrase is reiterated in item 6 with specific reference to the inheritance devised to Isaac. The testator says, “If he shall leave no children living at his death then said lands shall vest in his legal representatives of the Albright family.”
 

 It will be observed that this phrase, “his legal representatives of the Albright family,” refers tb the status of inheritance created by the adoption statute, and the statute applicable to this particular provision is not Sections 3139 and 3140, Revised Statutes, but Section 8030, General Code, for, as conceded in defendant in error’s brief, the status of inheritance is always subject to change by legislative enactment, and is to be determined by the statute as it existed at the date of Isaac Albright’s death in 1925.
 

 Now Jesse Albright, worthy as he has proved himself to be in carrying out his obligations toward his' adopted father, still remains under our
 
 *682
 
 law a stranger to Charles Albright, the father of Isaac Albright. Jesse Albright is not of Charles Albright’s blood, nor did Sections 3139 and 3140, Revised Statutes, nor Section 8030, General Code, invest Jesse with any rights as against Charles Albright’s estate.
 

 It might with considerable force be contended that Jesse Albright is the legal representative of Isaac Albright, for under the statute he had the same rights of inheritance from Isaac Albright as from his natural father; but never has a statute been enacted in this state making an adopted child a part of the family of the father or mother of the adopting father or mother. Granting that Jesse Albright was the legal representative of Isaac Albright, he was not “the legal representative of the Albright family.”
 

 Among other definitions for the word “family,” the Century Dictionary states that the term means those who descend from a common progenitor. It means the genealogical stock from which a man and those related to him by blood have sprung. Taking the will as a whole, it seems to us that the testator used the words “the Albright family” in this specific sense. Plainly the phrase, “the Al-bright family,” meant to Charles Albright those persons through whose veins ran his own blood. Only those who have the blood of Charles Albright in their veins are “the legal representatives of the Albright family.” The blood of Charles Albright does not run through the veins of Jesse Albright. Under the adoption statute, Jesse Albright is a part of Isaac Albright’s family, but not of the family of Charles Albright. This unanswerable
 
 *683
 
 fact excludes the adopted child from taking under the will of Charles Albright.
 

 The Court of Appeals found that neither the plaintiffs nor any one of the defendants other than Jesse Albright has any estate, title, or interest in or is entitled to the possession of the real estate in question, and quieted title in Jesse Albright, dismissing the petition of the plaintiffs and the answers and cross-petitions of all the defendants other than Jesse Albright, including that of Yetta Albright, the adopting mother of Jesse Albright. Yetta Albright subsequently moved to set aside the finding, judgment, and decree of the court as to her, and moved for a new trial, which motion the court overruled.
 

 Since Charles Albright specifically directed that this real estate descend to Isaac Albright’s “legal representatives of the Albright family,” which means the legal representatives of Isaac Albright of the blood of Charles Albright, Yetta Albright does not fall within the class which is to take under this item of the wi¡ll, and the Court of Appeals was correct in dismissing her answer and cross-petition. In that respect, therefore, the judgment of the Court of Appeals will be affirmed, and the judgment with respect to. J esse Albright will be reversed, and title to the land in question will be quieted in the plaintiffs in error and in the defendants in error with the exception of Jesse Albright and Yetta Albright, and partition will be ordered as prayed for.
 

 Judgment affirmed in part and reversed in part.
 

 Day, Robinson and Matthias, JJ., concur.