**SOUTHERN OHIO SAVINGS BANK & TRUST CO., Admr., etc v BOYER et**

Ohio Appeals, 1st Dist, Hamilton Co.

No. 5878.   Decided Dec. 2, 1940.

Francis Thomas Martin, Cincinnati, and George E. Whitman, for Sophie M. Boyer.

Pogue, Hoffheimer & Pogue, Cincinnati, and Robert H. French, Cincinnati, for Sara Hopkins Delscamp.

**OPINION**

By MATTHEWS, J.

This is an action to determine heirship, instituted in the Probate Court by the plaintiff as administrator of the estate of Ella Saxby, deceased. Sophie M. Boyer and Sara Hopkins Delscamp are rival claimants of the entire estate. Sophie M. Boyer bases her claim upon the admitted fact that as a first cousin and the nearest blood relative under the statutes of descent and distribution. Sara Hopkins Delscamp bases her claim upon the admitted fact that on the 8th day of December, 1927, John A. Reed, a brother of the decedent, by proceedings under §10503-12 GC, in the Probate Court of Montgomery County, duly designated her "to stand toward him in the relation of a daughter and heir-at-law in the event of his death", and that John A. Reed died before Ella Saxby, without having revoked such designated heir.

The Probate Court in which the pending action was instituted found in favor of Sara Hopkins Delscamp as the designated heir.

On appeal to the Court of Common Pleas of Hamilton County, that court found in favor of Sophie M. Boyer as the nearest blood relative under the statutes of descent and distribution. This appeal is from that judgment.

It is apparent that the task with which this court is confronted by this appeal is the construction of §10503-12 GC.   That section is:

"A person of sound mind and memory may appear before the Probate Judge of his county, and in the presence of such judge and two disinterested persons of his or her acquaintance, file a written declaration, subscribed by him, which must be attested by such persons, declaring that, as his or her free and voluntary act, he or she did designate and appoint another, naming and stating the place of residence of such person specifically, to stand toward him in the relation of an heir-at-law in the event of his or her death. If satisfied that such declarant is of sound mind and memory, and free from restraint, the judge thereupon shall enter that fact upon his journal, and make a complete record of such proceedings.   Thenceforward the person thus designated will stand in the same relation, for all purposes, to such declarant as he or she could, if a child born in lawful wedlock.   The rules of inheritance will be the same, between him and the relations by blood of the declarant, as if so born; and a certified copy of such record will be prima facie evi-

dence of the fact stated therein, and conclusive evidence, unless impeached for actual fraud or undue influence."

This statute was first enacted in 1854 (52 **Ohio Laws,** 78), and has been carried into every revision and codification since then without any substantial change.

The only change made in the section since 1926 has been the addition of the last sentence relating to the vacation 'of, or change in, the designation.

We are told that there has never been a statute similar to this in any of the states of this Union, or any country basing its jurisprudence upon the common law. Although it has been in force almost ninety years in Ohio, no other state has enacted any law bearing any resemblance to it, notwithstanding most of them have during this time enacted statutes under which a child could be adopted and thereby acquire the status either in whole or in part of a child of the blood of the adoptive parent.

These statutes providing for adoption, however, are limited to the adoption of minors, and the purpose of the legislature in enacting them and of those availing themselves of their provisions was not primarily to engraft one not of the blood upon the family tree for the purpose of inheritance upon death at some future time. They had in mind the present need of the adoptive parent and the adopted child for all those rights and duties—legal and moral— that exist in and grow out of the family relationship, and the state had an interest to be promoted by having the child supported and cared for and educated and reared in an atmosphere conductive to the production of self-reliant, law-abiding citizens. Many safeguards are provided in these adoption statutes to assure these results. To insure the satisfactory performance of these manifold duties by the parties the status is not created until after a full inquiry and a judicial finding that the stipulated conditions exist. The provision for inheritance is merely incidental to these main purposes.

This "Designated Heir" statute (§10504-12 GC) on the other hand has just one purpose and that relates to succession to property. The designated heir may be any one. It is not limited to minors. There is no judicial inquiry or determination that the designation would be in the interest of the parties or of the state. If the petitioner is of sound mind and not under any restraint, he has an absolute right to make the designation. The only inquiry is to determine whether he is of sound mind and free to act.

No matter in what words the legislature of Ohio has couched the incidental provisions of the adoption statutes relating to inheritance, the Supreme Court has uniformly held that the most that was conferred upon the adopted child was the right to inherit from the adoptive parent and has never construed any of these provisions to confer the right to inherit **through** the adoptive parent from such parent's collateral relations. **Upson v Noble, 35 Oh St 655; Quigley v Mitchell, 41 Oh St 375; Phillips v McConica, 59 Oh St 1; and Albright v Albright, 116 Oh St 668.**

It is said, however, that while the Supreme Court has so construed the language of the legislature, that body has through the years shown a tendency to confer greater rights upon the adopted child. There is no doubt that the legislature has seen fit to amend the statutes, for the purpose of making the status of an adopted child and the rights attendant thereon more nearly approximate those of a child of the blood. However, we do not find in any Ohio statute, either present or past, provision that the adopted child shall inherit **through** its adoptive parent from such parent's collateral relations. We do not so construe the present statute, §10512-19 GC. And we can think of no reason giving a greater right of inheritance to a designated heir than to an adopted child.

Both the designated heir statute and the inheritance provision of the adoption statutes were enacted substantially in their present form as a part of the probate code in 1931, e:ective January 1st, 1932. (**114 Ohio Laws 320**). The codifiers at that time had the advantage of the many cases that had construed the language of the prior adoption statutes. They also had the benefit of the many comments by able writers upon the law in which these decisions were analyzed. It was as clear then to the codifiers, as it is now to counsel in this case that there was language at hand by which the legislature could have accomplished the result claimed by the appellant without peradventure of a doubt. Counsel pose the issue before this court as whether the appellant has a right to inherit not only from the declarant, but also **through** the declarant from his collateral kinfolk. The legislature refrained from using any such language to express its intent, and in construing the language used we should consider that fact as pointing somewhat the meaning intended to be conveyed as something less than would have been expressed by those words.

We also deem it clear that there is no discoverable general public policy manifested by this statute, in the light of which the words should be construed. No matter what rule of construction is adopted—strict or liberal—the intent must be found within the words themselves, and, unless they express the intent that the designated heir shall inherit not only from but also through the declarant, no such right is conferred.

Now what right did the statute confer upon the declarant? It provided him with a method of designating a person to succeed to his property either solely or in common with his issue in such a way that there could be no post mortem litigation on the subject. By it, he secured at the time a court decree that he was of sound mind and free of restraint. In that respect it is superior to a testamentary provision, the validity of which is frequently challenged, with success, and particularly so when there are direct descendants and the will favors a stranger to the blood, and this challenge comes after the testator's death and when no one in the family is interested in defending it—in fact when all are interested in frustrating it.

This right to have this matter settled in his lifetime related solely to his own heir. The statute expressly so states. There is disclosed no intent to authorize the declarant to establish the relation heirship between all of his remote collateral kin of whose existence he is, perhaps, unaware, and a stranger, of whose existence they are equally unaware. His written declaration named the person "to stand toward him in the relation of an heir-at-law in the event of his or her death." The relation referred to was heirship between the declarant and the designated person—and, not between the designated person and any other person. And the event which the declarant had in mind was his own death and not that of any other person.

Now the court by its decree does not enlarge the purpose and effect of the declaration. All the court does is to satisfy itself that the declaration is that of a sound mind under no undue influence, and being so satisfied spreads the declaration upon the court's record.

It would seem that in providing this method the legislature would have required the declarant to use language in his declaration adequate to express the full import of the proceeding, rather than to authorize an insufficient declaration, and then expand it by a legal import that would astonish an unwary declarant and shock his collateral kin.

But it is said that is what the legislature did by this language:

"Thenceforward the person thus designated will stand in the same relation, for all purposes, to such declarant as he or she could, if a child born in lawful wedlock. The rules of in-

heritance will be the same, between him and · the relations by blood of the declarant, as if so ·born; and a certified copy of such record will be prima facie evidence of the fact stated therein, and conclusive evidence, unless impeached for actual fraud or undue influence."

Now clearly, the first sentence does not show any such intent. It speaks expressly of the relation between the declarant and the designated heir; and no other relation. It is conceded that that language under the Ohio cases relating to adoption would not enable an adopted child to inherit through its adoptive parent. And certainly, if it is insufficient to confer such right upon an adopted child, it is at least equally inadequate for. the purpose of conferring such right on a designated heir. The most that it does is to engraft this alien to the blood upon the family tree originating with the declarant. It does accomplish that, but it does not in express terms state fully the effect of such engraftment. As we view it, the sentence immediately following, and which we have quoted, was inserted for this purpose. But it does not state that the designated heir shall inherit through as well as from the declarant. It does not refer to any estate other than that already mentioned—the declarant's estate. It ·does not suggest any death other than that of the declarant against whic hthe declarant was making provision· as clearly as he would have had he occupied himself ·in making a will. This language:—"The rules of inheritance will be .the same, between him and the relations by blood of the declarant, as if so born" can be construed to confer the right to inherit from declarant's collateral kin only by disregarding the prior language of the section, and the declared purpose of the proceeding.

The purpose of its insertion was, we believe, to make it clear that the declarant having named a person should have just such interest in the declarant's estate as he would have had as a child under the statutes of descent and distribution.

A contrary construction would produce startling results. This statute makes no provision for notice to the designated heir of the proceedings in the Probate Court, by which he is so designated. Indeed the declarant might desire that such person have no knowledge of it just as many, if not most testators, desire that the knowledge of the will be kept from the beneficiaries and the heirs alike until after death. Now if all the rules of inheritance are to be applied just as though the designated heir were a child of the declarant, then all the declarant's relations would inherit through the designated heir from all of the collateral kin of such designated heir. And this result would be accomplished without the knowledge or consent of such persons.

For these reasons, we have reached the conclusion from an analysis of the language of the statute that the ·purpose and effect of designating an heir in this manner is to give to such designated heir a share in the declarant's estate, upon his death, to be determined by the application of the statutes of descent and distribution, and that it has no other effect.

The case of **Cochrel v Robinson, 113 Oh St, 526,** involved the question of the right of a designated heir to inherit from the declarant real estate that she had acquired by descent from her deceased husband as against the relatives · of such husband. The case, therefore, did not call upon the court to determine whether a designated heir could inherit through the declarant from a collateral relative. From a reading of the case and particularly the sylabus, we conclude the court was of the opinion that the statute gave the right to inherit from, but no right to inherit through the declarant. The second paragraph of the syllabus is as follows:

"2. Such person so designated is to be regarded the same as 'issue' of the person so designating, in so far as it involves his right to inherit from the

person so designating under the statutes of descent and distribution."

It would serve no purpose to expand this opinon by comment upon the many cases cited by counsel. It is conceded that but one directly decides the question before the court. With the one exception, they do not even contain a direct obiter dictum on the point. The exception is the case of **Rogers v Cromer, 24 Abs 508,** in which the Court of Appeals of the Second District was called upon to determine whether a designated heir could inherit through the declarant, and, after considering the statute and all the cases that shed any light upon its meaning, it decided against the claim.

For these reasons, the judgment is affirmed.

HAMILTON, PJ. & ROSS, J., concur.