EVERHARD ET AL., TRUSTEES, APPELLEES, *v.* BROWN ET
AL., APPELLEES; FOREMAN ET AL., APPELLANTS.
EVERHARD, EXR., APPELLEE, *v.* FOREMAN ET AL., APPEL-
LEES; EVERHARD ET AL., APPELLANTS.

(Nos. 195 and 196—Decided April 5, 1945.)

*Mr. Robert H. Jamison* and *Mr. Robert F. Lee,* for appellees William H. Everhard and others, as trustees, in case No. 195, and appellee William Everhard, Exr., in case No. 196.

*Messrs. Ainsworth & Gilbert* and *Messrs. Lawyer & Anderson,* for appellees Bessie Everhard Fair and others.

*Mr. M. R. Gilbert,* for appellees Byron S. Dague and others.

*Mr. Raymond B. Bennett,* for appellees Raymond B. Bennett, Admr., and others.

*Messrs. Balluff, Harbeck & LeGrand,* for appellee Laken C. Lowther.

*Mr. Burrel Barash,* for appellee Elizabeth Lowther Harriman.

*Messrs. Pelton & Wilson,* for appellee Russell K. Northrop.

*Messrs. Lynch, Day, Lynch, Cope & Ketterer,* for appellees The Pastors Fund Society of the General Synod of the Lutheran Church and others, in case No. 195, and appellees Stephen H. Finley and others, in case No. 196.

*Mr. W. E. Pardee, Mr. C. T. Moore* and *Messrs. Van Epp & Laribee,* for Jesse Wall Foreman and others, appellants in case No. 195 and appellees in case No. 196.

*Mr. B. Harry Reck, Mr. John R. Rood* and *Messrs. Van Epp & Laribee,* for Henry E. Laribee, Admr., and others, appellants in case No. 195 and appellees in case No. 196.

*Mr. W. E. Pardee,* for Harold R. Holm and others, appellants in case No. 195 and appellees in case No. 196.

*Messrs. McKeehan, Merrick, Arter & Stewart* and *Messrs. Stilwill, Brackney & Stilwill,* for appellants Mary Payne Everhard and Gordon Glayde Everhard.

*Messrs. Hauxhurst, Inglis, Sharp & Cull* and *Mr. Sam H. Sebree,* for appellant Frank Gordon Everhard.

*Messrs. Ford, Reece & Baskin,* for Martha W. Everhard and Wm. R. Everhard, appellants in case No. 195 and appellees in case No. 196.

DOYLE, J. Nathan S. Everhard died in 1919 and left a will disposing of an estate of the value of more than a million dollars. He was survived by his wife, Ella M. Everhard, until her death in 1942. His father and mother, and all of his brothers and sisters, who numbered thirteen, died prior to the date of the execution of the will (1918), as also had his wife's father and mother and all of her brothers and sisters, five in number. Children had not been born to either spouse.

By the will, the whole estate, after the payment of debts, certain specific legacies and directions for noncontroversial matters, is given to trustees in trust (1) "To collect the dividends and income therefrom and * * * to pay over all or any part of the residue of said dividends and income remaining to * * * (his) said wife, Ella M. Everhard, at such time or times as she may or shall desire or request during her natural life"; (2) at the decease of his wife, and within six months thereafter, to pay specific money legacies aggregating over $49,000; and (3) after compensation to the said trustees, to "proceed to divide and distribute the residue of my estate among the nephews, nieces, grandnephews and grandnieces of myself, and the nephews, nieces, grandnephews and grandnieces of my wife, Ella M. Everhard, share and share alike, grandnephews and grandnieces receiving the same share as the nephews and nieces."

Case No. 195 is in this court *de novo,* following an appeal taken from the Probate Court of Medina county, and this opinion, except as noted in the last paragraph hereof, will deal only with that case. The trus-

tees, here as they did in the lower court, seek a construction and interpretation of the instrument which prescribes their duties, and pray for a determination of those who should receive a share or shares of the residuary estate, and for other general instructions.

We encounter in the evidence 128 persons who claim as residuary legatees who survived the testator; 97 residuary legatees who survived the testator's widow; 9 nephews and nieces who predeceased the testator; adopted children of testator's nephew; and other facts which will be introduced in their proper places.

The complexity of our problem and its entangled character is well stated by one of the groups of counsel in the following exposition:

"I. Construction of will—time for determining legacies. Are the residuary legatees (a) the 97 who survived the testator's widow on May 12, 1942, or (b) the 128 who survived testator on April 2, 1919?

"II. Sec. 10581, Ohio General Code—lapse or 'other relative' statute. If the residuary legatees are the 128 living on April 2, 1919 [the time of the death of the testator], do the 21 (issue of the 9 nephews and nieces of testator who predeceased him) receive the 9 shares their parents would have received, in addition to the 21 shares given them as grandnephews and grandnieces of the testator? If so, 107 take 107 shares, 21 take 21 shares, and said 21 also take 9 additional shares, a total of 137 shares.

"III. Are the issue of grandnieces of testator's widow * * * each entitled to a share?

"IV. Are the adopted children of Gordon Glayde Everhard, a nephew of testator, each entitled to a share?

"V. Should the income of $29,264.16, and accrued bond interest of $3,340.22, at May 12, 1942, the date of the widow's death, be paid to her estate?"

It will serve no useful purpose to attempt to enlarge upon the first general principle applicable to the construction and interpretation of wills. The cases are legion which pronounce that "The first and great rule in the exposition of wills (to which all other rules must bend), is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law." John Marshall, Chief Justice of the United States, in *Smith* v. *Bell,* 6 Peters 68, at p. 74, 8 L. Ed., 322, at p. 325. And, see, 41 Ohio Jurisprudence, Wills, Section 467 *et seq.,* and Ohio cases cited. So ruled, we proceed to analysis.

I. "When did this estate vest?" query counsel, and "What did the testator mean when he said, 'my trustees * * * shall proceed to divide and distribute the residue of my estate among the nephews, nieces, grandnephews and grandnieces of my wife * * *, share and share alike, grandnephews and grandnieces receiving the same share as the nephews and nieces'?"

"1. Ordinarily, a will speaks as of the death of the testator.

"2. The law favors the vesting of estates at the earliest possible moment, and a remainder after a life estate vests in the remainderman at the death of the testator, in the absence of a clearly expressed intention to postpone the vesting to some future time." *Ohio Natl. Bank of Columbus, Trustee,* v. *Boone,* 139 Ohio St., 361, 40 N. E. (2d), 149, 144 A. L. R., 1150.

As we examine the will, we find the wife as the chief object of solicitude. She was to receive their modest homestead, $25,000 by direct bequest, and "all or any part" of the tremendous income from a huge estate, for the span of her life.

The next primary purpose of the trust was to distribute, equally and impartially, after the death of his wife, the vast bulk of his estate to their respective nearest relatives, and by his chosen phrases he treated

them as members of but a single class. He knew that both he and his wife were the last of their respective brothers and sisters, and that they had many relatives of consanguineous and affinitive kinship, who were the direct issue of their deceased brothers and sisters. These were the people whom he had selected for his munificence.

There is no language in the instrument which indicates an intention to postpone the vesting of the bulk of testator's estate until after the death of his wife. In fact, the will directs that his bounty shall be awarded at the time of *an inevitable future event* (the death of his wife), and not upon the occurrence of some contingency as that word is used to mean an event which is dependent for effect on something that may or may not occur. There was, at the time the will was drawn and at the time of the death of the testator, members of the class in being who would have had the right to possession immediately upon the determination of the life estate. There was no uncertainty of the right to actual enjoyment on the part of the members of the class, nor was payment deferred for reasons personal to the legatees.

"* * * though a gift arises wholly out of directions to pay or distribute *in futuro,* yet if such payment or distribution is not deferred for reasons personal to the legatee, but merely because the testator desired to appropriate the subject matter of the legacy to the use and benefit of another for and during the life of such other, the vesting of the gift in remainder will not be postponed but will vest at once, the right of enjoyment only being deferred." *Knight* v. *Pottgieser,* 176 Ill., 368, at p. 374, 52 N. E., 934.

The rule is applicable to a class devise or legacy. *Carter* v. *Carter,* 234 Ill., 507, 85 N. E., 292; *Ohio Natl. Bank* v. *Boone, supra.*

"* * * it is the rule no longer that where there is no gift but by a direction to pay, or divide and pay, at a future time, or on a given event, the vesting will be postponed until after that time has arrived, or that event has happened, but the test is the reason for the postponement, and if that was that the property had been given to another for life the bequest vested." *Executors of Eury* v. *State,* 72 Ohio St., 448, at p. 454, 74 N. E., 650.

We are cited to the case of *Barr* v. *Denney,* 79 Ohio St., 358, 87 N. E., 267, and in this connection we do not feel called upon to discuss it or reconcile it any more than did the Supreme Court of Ohio in *Ohio Natl. Bank, Trustee,* v. *Boone, supra,* wherein the court, in the third paragraph of the syllabus, set forth a plain, positive rule, which we recognize and follow— to wit:

"3. To the frequently stated general rule that if there is no gift in a will but by a direction to pay at a future time or event, the legacy will not vest in the beneficiary until the time for payment arrives, is the well recognized exception that where the postponement of payment is for the convenience of the estate, as the appropriation of the subject-matter of the legacy to the use and benefit of another for life, the ultimate interest will vest at the death of the testator. Under such exception, the postponement of payment relates merely to the enjoyment of the legacy and is not attached to the substance thereof."

The majority of the members of this court espousing, as we do, the foregoing pronouncements, conclude that this estate vested, with the exceptions which will be hereinafter noted (Breyley and McCurdy bequests), at the death of the testator. And while the pole star for the construction and interpretation of wills is always the intent of the testator, it must be recognized that, in ascertaining that intent, there are certain well

recognized rules of construction and interpretation which are presumptively known to all testators. The instant will does not *in terms* indicate the intent of the testator as to the time for the vesting of his estate. We believe, however, that by looking to the "four corners" of the instrument his intent of an early vesting can be ascertained. Regardless of this, if we were to conclude that an intent was not expressed and could not be inferred, or was ambiguous, a resort to the rules of construction requires the conclusion that his estate vested at the time of his death. The intention of a testator may be ascertained from what he has forborne to say as well as from what he has said.

II. "If the residuary legatees are the 128 living on April 2, 1919 [the time of the death of the testator], do * * * 21 of them (issue of the 9 nephews and nieces who predeceased him) receive the 9 shares their parents would have received, in addition to the 21 shares given them as grandnephews and grandnieces of the testator?"

The court has bestowed upon this question the most deliberate consideration, and the answer here follows, with our reasons.

Section 10581, General Code (as it existed at the time of the execution of the will and at the time of testator's death), was in the following terms:

"When a devise of real or personal estate is made to a child or other relative of the testator, if such child or other relative was dead at the time the will was made, or dies thereafter, leaving issue surviving the testator, in either case such issue shall take the estate devised as the devisee would have done, if he had survived the testator. If such devisee leaves no such issue, and the devise be of a residuary estate to him or her, and other child or relative of the testator, the estate devised shall pass to, and vest in such resid-

uary devisee surviving the testator, unless a different disposition be made or required by the will.''

(The statute was afterwards amended to some extent, and enacted as Section 10504-73, General Code, and is now in force as then rewritten.)

Section 10581, General Code, is construed to mean that, unless a contrary intention is expressed, when a devise or bequest is made to members of a class of children or other relatives of the testator, if any one of such class has predeceased the testator, or even has died before the execution of the will, the issue of such deceased person shall take the estate devised in the same manner as such devisee would have taken, if he had survived the testator. *Woolley* v. *Paxson,* 46 Ohio St., 307, 24 N. E., 599; *Shumaker* v. *Pearson,* 67 Ohio St., 330, 65 N. E., 1005.

And further, that the word ''relatives'' refers only to those who are consanguineous.

''1. * * * the phrase 'other relative' should, in accordance with the maxim *noscitur a sociis,* be restricted to relationships of the character indicated by the associated word 'child,' and regarded as including those which are consanguineous, but excluding those which are affinitive merely.'' *Schaefer* v. *Bernhardt,* 76 Ohio St., 443, 81 N. E., 640. And, see, *Foreman, Admx.,* v. *Medina County National Bank,* 119 Ohio St., 17, 162 N. E., 42.

The language of the testator which shows clearly that he wanted his wife's relatives and his own relatives to ''share and share alike,'' we believe is most significant. We indulge the presumption that he knew of the statute and the construction placed upon it by the Supreme Court of Ohio, and that he prepared his will possessed of such knowledge. *Larwill's Exrs.* v. *Ewing,* 73 Ohio St., 177, 76 N. E., 503; *Ohio National Bank of Columbus, Gdn.,* v. *Harris et al.,* 126 Ohio St., 360, 185 N. E., 532.

If we were to permit the 21 (*i. e.*, the issue of testator's 9 relatives who predeceased him) to take the share which their consanguineous relatives would have taken (under the statute), had they survived, and exclude from taking (under *Schaefer* v. *Bernhardt, supra*), the issue of his wife's relatives who predeceased him, we would defeat the testator's intention to treat both his wife's relatives and his own relatives as members of but one class, and would preclude them from sharing alike. No such extraordinary result did he intend. He used words inexorably clear to indicate that he did not want such a result to occur.

We hold, accordingly, that Section 10581, General Code, does not apply, and the 21 do not take shares through their parents who predeceased the testator, because his terms and phrases appropriately show a contrary intention. He wanted his own relatives to share and share alike with his wife's relatives, as members of a single class, and not to favor some who were consanguineous and exclude some who were affinitive merely.

III. "Are the issue of grandnieces of testator's widow * * * each entitled to a share?"

Nancy Finley Lowther was a grandniece of the testator's widow. She died on November 18, 1918 (prior to the death of the testator). She left surviving her, Elizabeth Lowther Harriman, a great grandniece of the testator's widow.

Mary Ann Finley Northrop was also a grandniece of the testator's widow, who died on July 7, 1905. Surviving her is Russell K. Northrop, a great grandnephew of the testator's widow.

Elizabeth Lowther Harriman and Russell K. Northrop each claim a share in their own right as members of the class.

The general rule is that a testator must be presumed to have used words in his will in their ordinary or pri-

mary sense and meaning. The words "nephew," "niece," "grandnephew" and "grandniece," as used in the will, mean the immediate descendants to the second generation of the brothers and sisters of the testator and his wife. See 28 Ruling Case Law, Wills, Section 225.

If the terms and expressions employed by a testator forbid interpretation by reason of their clarity, a court is without power to change them. *Godfrey* v. *Epple,* 100 Ohio St., 447, at p. 454, 126 N. E., 886, 11 A. L. R., 317. And, see, *First Natl. Bank & Trust Co.* v. *Baker,* 124 Conn., 577, 1 A. (2d), 283; 28 Ruling Case Law, Wills, Section 184.

We find nothing in the provisions of the will which indicates that the testator used the words "nephew," "niece," "grandnephew" and "grandniece" otherwise than in their primary significance. There is no patent ambiguity. And it does not fall within the province of this court to remake the testator's will so that there will be included a great grandnephew and a great grandniece as direct residuary legatees. Such a deduction from such a slight implication that the testator so intended, would afford a most unsafe guide in the exposition of wills. It is our conclusion, therefore, that the great grandnephew and the great grandniece here under discussion are not included in the class of residuary legatees.

IV. "Are the adopted children of Gordon Glayde Everhard, a nephew of testator, each entitled to a share?"

On December 17, 1930, Gordon Glayde Everhard, a nephew of the testator, adopted Frank Gordon Everhard, and on September 21, 1935, adopted Mary Payne Everhard. These children were adopted in the state of Iowa when they were minors, and were not blood relatives of either the testator or his wife. It is claimed that they are entitled to participate as members of the

class—*i. e.,* as a grandnephew and a grandniece—who came into being after the death of the testator but prior to the time for distribution.

"Where a devise in remainder is made to a class which may be increased after the death of testator by the birth of others answering the description before the estate takes effect in possession, the courts will, if possible, construe this as a vested remainder in those of the class answering the description at the death of testator. Such remainder, however, does not by the terms of the will vest absolutely in those beneficiaries to the exclusion of those born thereafter, and before the time of taking possession who answer to the description. The remainder, therefore, while vesting on testator's death, will open to let in the afterborn, and to that extent the original beneficiaries will be divested of a proportionate interest." 3 Page on Wills (Lifetime Ed.), Section 1265. And, see, 16 Ohio Jurisprudence, Estates, Section 106.

The foregoing rule we adopt for the purposes of this case, and determine that members of the class—*i. e.,* nephews, nieces, grandnephews and grandnieces of the blood of the testator or his wife—who came into being between the time of the death of the testator and the time of the termination of the life estate, take in equal share with those in being at the time of the testator's death.

So ruling, we now proceed to the claim of the adopted children that they are entitled to take in the same manner as do those blood relatives of the testator, and the blood relatives of his wife, who came into being as members of the class after the death of the testator.

Whom did the testator understand to be comprehended within the words used?

We assume that he knew of existing legislation that enabled proper persons, with a court's approval, to adopt children, and likewise knew the legal status

which an adopted child attained. Further, that a person adopted pursuant to and in accordance with the law of a state other than Ohio, which, at the time of adoption, was the domicile of the adopting parent, is an adopted child within the purview of the Ohio adoption statutes. Compare, *Barrett, Admr.,* v. *Delmore,* 143 Ohio St., 203, 54 N. E. (2d), 789.

However, we do not have before us the question of the right of an adopted child to inherit. Neither is our ultimate object a construction of adoption statutes; it is to interpret the will and to determine what the testator meant to accomplish with respect to those who were to share in his estate. 1 American Jurisprudence, Adoption of Children, Section 64.

Nevertheless, we deem it proper to look to the statute and to its construction as bearing on the testator's intention.

Laws pertaining to inheritance are generally built upon natural ties of blood relationship. Adoption was unknown to the common law, although it was early recognized in the civil law. Borrowing from the civil law, the various states of the Union have enacted adoption statutes. There is a marked lack of uniformity in the phraseology used in these statutes, and this fact probably accounts for the different interpretations given by the various courts.

The courts of this state have been generally consistent in interpreting the Ohio statutes as enacted prior to the amendment of 1932.

In *Phillips, Exr.,* v. *McConica, Gdn.,* 59 Ohio St., 1, 51 N. E., 445, 69 Am. St. Rep., 753, the court, speaking through Burket, J., said (at p. 9):

"It was well said in *Upson* v. *Noble,* 35 Ohio St., 658, that in passing the adopting statute 'the legislature was dealing with personal rights and duties growing out of the relation of parent and child, by trans-

ferring them from the natural to the adopted relation.'

"The statute enables the adopted child to inherit from its adopter, but not through him. The statute does not make the adopted child the heir of the ancestors of its adopter, and the right of the adopted child to inherit cannot be extended beyond where the statute has fixed it. The statute in this regard must be strictly construed, as held in [*Upson* v. *Noble*] 35 Ohio St., 658.

"Adoption does not change the law of descent and distribution as to the property of the ancestors of the adopter. *Quigley* v. *Mitchell,* 41 Ohio St., 375. The ancestors of the adopter are presumed to know their relatives by blood, and to have them in mind in the distribution of their estates, either by will or descent, but they cannot be expected to keep informed as to adoption proceedings in the probate courts of the counties of this state; and to allow an adopted child to inherit from the ancestors of the adopter would often put property into the hands of unheard of adopted children, contrary to the wishes and expectations of such ancestors."

Subsequent to that case, the Supreme Court of Ohio (in 1927) decided *Albright* v. *Albright,* 116 Ohio St., 668, 157 N. E., 760, and again held in effect that an adopted child cannot inherit through the adopting parent.

Several years later (in 1932), at the instance of the Ohio State Bar Association, the Legislature undertook to amend the statute, and included the following new language: "but [the adopted child] shall be capable of inheriting property expressly limited by will or by operation of law to the child or children, heir or heirs at law, or next of kin, of the adopting parent or parents, or to a class including any of the foregoing."

Section 10512-19, General Code (now Section 10512-23, General Code)..

It was thought by textbook writers and members of the bar committee that this language accorded an adopted child the same rights as a natural child to inherit through its adoptive parent, as well as from its adoptive parent. See 8 L. J. O. S. U. 113, case note and citations.

Later—in 1940—the question was raised in the Court of Appeals for Cuyahoga county, and that court, with Judge Lieghley vigorously dissenting, held that ''an adopted child is entitled to inherit not only from an adopting parent, but also through such adopting parent from a deceased sister of the adopting parent.'' *White, Admr.*, v. *Meyer et al.*, 66 Ohio App., 549, 37 N. E. (2d), 546.

In the same month of the same year, the Court of Appeals for Hamilton county, while construing another statute, had occasion to examine the adoption statute, and in their opinion declared to an exactly opposite construction—*i. e.*, that the amended statute did not change the authority of the former holdings to permit inheritance through the adopting parent. *Southern Ohio Savings Bank & Trust Co., Admr.*, v. *Boyer*, 66 Ohio App., 136, 31 N. E. (2d), 161.

We have deviated in the preceding paragraphs from our main problem—*i. e.*, What was the testator's intention?—but we believe that in the determination of that problem several considerations may be resorted to. One of them is the adoption statute in effect, and the construction given it by the courts, at the time he drafted his will, and at the time he died. It is presumed that the testator knew and acted in contemplation of the reciprocal rights and duties of the persons affected by the statute.

As heretofore stated, the law in effect at the time the will was prepared and at the time of his death, pre-

cluded an adopted child from inheriting through the adopting parent. Whether it is now the rule under the amended statute, we are not called upon to decide. Our concern is only with the environment of the testator when he made his will, as reflecting upon his intention.

He knew that his nephews and nieces, and grand-nephews and grandnieces, of his own blood, could be his legal heirs under the laws of descent and distribution if he died intestate. He knew that adopted children did not inherit through the adopting parent, and therefore would not inherit from him. He also knew that his wife's relatives could not inherit from him, except by apt provisions in a will. He desired his legal heirs to have a part of his estate, but he also wanted the heirs of his wife to share and share alike with those of his own blood. He consummated this desire by creating a class of legatees which included both groups. Had he intended to include other groups not of his own or his wife's blood, he would have so provided. He forebore to give adopted persons membership in the class.

"There is a presumption that words used in a will are used in their primary and ordinary sense. It is generally held that when a testator uses the word 'child' he means a natural child, unless the context clearly shows that he means to use the term in a sense including adopted as well as natural children. This is particularly the fact when the testator speaks, not of his own children, but of the children of other persons." *Albright* v. *Albright,* 116 Ohio St., 668, at p. 679.

There is a general rule pronounced in the foregoing quotation which, by analogy, applies with even greater force to the facts of the instant case than to the case in which it was asserted.

The fact that these adoptions occurred many years subsequent to the death of the testator is a circum-

stance of great importance. The testator was a complete stranger to the adoptions. We believe it inconceivable that the testator intended to include persons in his bounty who might years after his death become adopted children of a nephew. Certainly the presumption is to the contrary, and to include such children would enlarge the words used beyond their ordinary meaning and import. Ordinarily, the words "grandnephew" and "grandniece" do not contemplate a person adopted by the son of a testator's brother or sister. 28 Ruling Case Law, Wills, Section 223; *Re Estate of Puterbaugh, Deceased*, 261 Pa., 235, 104 A., 601, 5 A. L. R., 1277.

For a comprehensive discussion of the general subject, see "Construction of Private Instruments Where Adopted Children Are Concerned," 43 Michigan Law Review, 705.

We therefore conclude that the adopted children claiming under this will are not entitled to participate in the distribution.

V. "Should the income of $29,264.14, and accrued bond interest of $3,340.22, at May 12, 1942, the date of the widow's death, be paid to her estate?"

The will directed the trustees "to collect the dividends and income * * * and after allowing for reasonable expenses required in caring for and protecting said trust, *to pay over all or any part of the residue of said dividends and income remaining to my said wife, Ella M. Everhard, at such time or times as she may or shall desire or request during her natural life.*" (Italics ours.) Shortly after the death of the testator, the widow instructed the trustees "to pay over to her the income from the estate as rapidly as convenient to do so." (Testimony of William Everhard, trustee.)

An "estate account" was commenced in the Cleveland Trust Co., and all income from the testator's es-

tate was there deposited. From this account, expenses were met and transfer of income funds made to William Everhard, as agent for the widow.

It appears from the record that the "estate account" was commenced for the convenience of the trustees, and that when, in their judgment, a sufficient accumulation had resulted to make it convenient, a transfer was made to the widow's account.

At the time of the widow's death, the trustees had, awaiting distribution to her account, in an "Estate of N. S. Everhard, income account," in the Cleveland Trust Co., $29,264.14, which amount was derived from income from the trust property received by the trustees within recent months prior to her death. Also, at the time of the death of the widow, the trustees held as property of the trust certain noncoupon U. S. government treasury bonds, which had accrued interest in the sum of $3,340.22, but which interest was not due or payable at the time of her death but has been since collected.

As we construe the will, the testator intended that title to the entire income from his estate should immediately pass to his wife, and that the directions given for its distribution were solely for the convenience of his wife and not controlling as to question of title; and likewise that the custom of distribution was solely for the convenience of the trustees and the widow.

We therefore determine that (1) the amount of income funds in the possession of the trustees at the time of the widow's death should be given over to her estate; and (2) that the accrued interest on the bonds up to the time of her death should pass to her estate, for "it is uniformly held that interest, at least if not represented by coupons, is apportionable in respect of time, as between persons successively entitled; for it is said that, though payable only periodically, interest

accrues *de die in diem."* 126 A. L. R., 33, annotation II a (citing *Barbour* v. *Gallagher,* 2 Ohio App., 205).

VI. In addition to the foregoing questions, it appears that some of the objects of the testator's bounty have died since his death, leaving heirs to inherit; and in some instances the heirs surviving claim a share in their own right, as members of the designated class, as well as a right to inherit from their deceased next of kin, who, had they lived, would have been entitled to share in the distribution. It is asserted that, if these claims are recognized, the testator's scheme to have the members of the class share and share alike is defeated and that some will benefit more than others.

We have vested this estate in the members of the class at the time of the death of the testator. We open it during the period of the life interest to let in after-born members of the class. We close it at the termination of the life estate.

The members of the class who were alive at the death of the testator acquired vested future interests, any of which was subject to alienation if the legatee so desired. It likewise passed by operation of law in the event of intestacy, or by will if he so desired.

The fact of the death of the owner of a vested future interest before his interest took effect in possession, does not cause it to fail unless the will so provides. And the fact that the heir of a deceased member of a class who died before distribution, takes a share in his own right, as well as one inherited by operation of law, or by will or by assignment, we do not determine to be inconsistent with the intent of the testator. There was nothing in the will to prohibit any member of the class from assigning his or her share to one of the grandnephews, and if all had so assigned their interests, but one member of the class would have taken the entire residue at the time of distribution.

We construe the will to reflect the testator's inten-

tion to have his residuary estate so divided that there would be a share for each member of his designated class who was alive at the time of his death, and, in addition, for each of those who came into being during the life estate, and that he did not intend to restrict the gift in any manner. Had he intended a restriction, he could easily have manifested such intention by appropriate language.

The words ''share and share alike'' do not limit one who inherits, buys, or has had assigned to him, a share or a part of a share from a member of a class. He acquires his additional interest through an entirely separate channel, and through an entirely different right, than does an original legatee.

VII. It also appears that the fourth paragraph of item 4 of the will provides in part:

''At the decease of my said wife and within six months thereafter to pay to the several institutions and persons herein named the following sums, viz.: * * *

''Pay to Martha E. Breyley, who was a member of my family for some years, if she be living at the decease of my said wife, fifteen thousand dollars ($15,000.00), and if Martha E. Breyley shall die before the decease of my said wife, leaving children living at decease of my said wife, then to pay said fifteen thousand dollars ($15,000.00) to said children of Martha E. Breyley, living at decease of my said wife, but if said Martha E. Breyley shall die before the decease of my wife, leaving no children living at decease of my said wife, then said $15,000 shall go to nephews, nieces, grandnephews and grandnieces of myself and wife as hereinafter set forth.

''Pay to W. P. Ellenberger, now of Washington, D. C., five thousand dollars ($5,000.00).

''Pay to Ethel McCurdy, now of Toronto, Canada, five hundred dollars ($500.00), and if said Ethel Mc-

Curdy shall die before the decease of my wife, leaving children living at decease of my wife, then to pay said five hundred dollars to the children of said Ethel Mc-Curdy, living at decease of my said wife, but if there be no children of said Ethel McCurdy living at decease of my wife, the said $500 to go to the nephews, nieces, grandnephews and grandnieces of myself and wife, as hereinafter set forth.

"* * *

"Pay to Lydia Isenberger, Doylestown, Ohio, two hundred dollars ($200.00)."

The above bequests to Martha E. Breyley and Ethel McCurdy are good examples of contingent remainders, and demonstrate, by the language used, that the testator could and did distinguish between a vested and a contingent remainder.

The fact that both legatees are now alive requires the payment of their legacies.

W. P. Ellenberger died in 1931, and Lydia Isenberger died in 1935. The testator placed no contingency upon those bequests, and vested them at the time of his death, as he likewise vested the class bequest. Therefore, these bequests should be paid, because they vested during the lifetime of the legatees.

We believe that the foregoing exposition answers all of the questions in actual controversy. A journal entry will be prepared and submitted for approval.

By agreement of the parties, case No. 196 was heard and submitted as an appeal on questions of law and fact. In so far as any of the legal questions herein discussed apply to the estate of Ella M. Everhard, the executor shall be governed by the disposition made of such questions in case No. 195. And inasmuch as no challenge is made to the various items in Mrs. Everhard's will except such as are ruled by the decision in Dr. Everhard's case, counsel will have no difficulty in

agreeing upon a journal entry in her case, to be submitted for the approval of this court.

*Decrees accordingly.*

WASHBURN, J., concurs.

STEVENS, P. J., dissenting in part and concurring in part:

I find myself unable to agree with the conclusion announced by my associates regarding the time of vesting of the estate in remainder in case No. 195.

The will in question provides:

"Item 4. I give, bequeath and devise the residue and remainder of my property * * * in trust * * * upon the following trusts and for the following purposes, *viz.*: * * *

"Third: To collect the dividends and income therefrom and * * * to pay over all or any part of the residue of said dividends and income remaining to my said wife, Ella M. Everhard, at such time or times as she may or shall desire or request during her natural life.

"Fourth: At the decease of my said wife and within six months thereafter to pay [then follow certain specific bequests].

"Fifth: My said trustees * * * shall proceed to divide and distribute the residue of my estate among the nephews, nieces, grandnephews and grandnieces of myself, and the nephews, nieces, grandnephews and grandnieces of my wife, Ella M. Everhard, share and share alike, grandnephews and grandnieces *receiving the same share* as the nephews and nieces." (Italics mine.)

The pole star of will construction is the ascertainment of the intention of the testator, as gleaned from an examination of all the provisions of the will. If that

intention can be thus determined, and the same be lawful, then it should be made effective; but if, after such examination, the meaning of the words used remains ambiguous, recourse may then be had to "such rules of interpretation as the reasoning and experience of the courts have wrought out and established by common consent as tending to the uniform administration of justice." *Barr* v. *Denney,* 79 Ohio St., 358, at p. 366, 87 N. E., 267.

So far as the specific bequests to W. P. Ellenberger and Lydia Isenberger are concerned, it is apparent that the testator intended them to vest at his death.

The principal question here involved is, When does the will state the interests of the residuary legatees shall vest: at the death of the testator, or at the death of his wife?

The will provides for a "sháre and share alike" distribution by the trustees to the "nephews, nieces, grandnephews and grandnieces" of testator and his wife, "grandnephews and grandnieces *receiving the same share* as nephews and nieces." (Italics mine.)

In order to effectuate that provision of the will, which provision, in my opinion, is clear and unambiguous, it is necessary to determine that the nephews, nieces, grandnephews and grandnieces of the testator and his wife, living at the death of testator's wife, are the persons entitled to participate. Such determination accomplishes the clearly expressed intention of the testator, and those persons within the designated class all receive a "share and share alike" distribution. Any other conclusion defeats the manifest and clearly expressed intention of the testator, and in my opinion ought not to be reached.

The case of *Ohio Natl. Bank of Columbus, Trustee,* v. *Boone,* 139 Ohio St., 361, 40 N. E. (2d), 149, 144 A. L. R., 1150, is not decisive of the question here to be determined. In that case the majority of the court held

that there was such language used in the will as to give rise to an ambiguity. There, recourse to the rules of will construction was necessary to determine the intention of the testator. Such, however, is not the case here. In my opinion there is in this will no ambiguity; hence, recourse to the rules of will construction is unnecessary and improper.

As to all questions presented in this action, it is my judgment that they were properly resolved by the Probate Court. I therefore conclude that a decree as entered in the Probate Court should be here entered.

I concur in the conclusion announced in case No. 196.