KOVAR, EXRX., *v.* KORTAN ET AL.

(No. 663398—Decided April 2, 1965.)

*Mr. Howard E. Egert*, for plaintiff.

*Mr. William B. Saxbe*, attorney general, and *Mrs. Neva H. Wertz*, for the state of Ohio.

*Mr. Bronis J. Klementowicz*, director of law, and *Mr. Charles A. Chandler*, for the city of Cleveland.

*Mr. John T. Corrigan*, prosecuting attorney, and *Mrs. Doris Brucker*, for Cuyahoga County.

*Mrs. Eileen Flynn*, for the unknown heirs and next of kin.

ANDREWS, Chief Referee. Plaintiff is the executrix of the last will and testament of Joseph Novak. She has filed a petition to construe his will and the first codicil thereto.

The petition seeks the direction of the court with reference to the proper distribution of certain portions of the estate.

By item 2 of his will, testator directs that all his real estate be sold by his "executor" without order of court, "in order to pay all the following bequests in cash."

Item 6 directs that all the rest and residue of testator's estate be distributed "to the following organizations and people; in equal shares."

Three organizations are listed as a, b, and c. These will be referred to in more detail later. The "people" are listed as follows:

"d. Ed Kortan and wife
"e. Claire Kortan
"f. Ruth Kortan
"g. William Kortan and wife"

Item 1 of the first codicil reads:

"I hereby revoke paragraphs d., e., f., and g. of item 6 of said will and substitute for those four provisions the following.

"I bequeath the sum of $2,000 to my nephew Ed Kortan, and his three children Claire, Ruth and William, each to share and share alike in this sum."

Claire, whose actual name was Clarise, and who married Arnold Long, predeceased the testator, leaving two minor children.

Although in his will the testator referred to Ed Kortan as his nephew, the evidence shows that Ed Kortan was not in fact his nephew, nor otherwise related to him by blood. Neither were Ed Kortan's children. The relationship of all these beneficiaries was to the testator's deceased wife.

The anti-lapse statute, Section 2107.52, Revised Code, states:

"When a devise of real or personal estate is made to a relative of a testator and such relative was dead at the time the will was made, or dies thereafter, leaving issue surviving the testator, such issue shall take the estate devised as the devisee would have done if he had survived the testator."

To come within the statute, the "devise" must have been

made to a "relative." As used in the statute, the word "relative" is limited to persons related to the testator by consanguinity, and does not include those "related" by affinity. *Schaefer* v. *Bernhardt* (1907), 76 Ohio St. 443; *Everhard* v. *Brown* (1945), 75 Ohio App. 451; *Hewes* v. *Mead* (1947), 81 Ohio App. 489; *Schuck* v. *Schuck* (Prob. Ct. 1958), 80 Ohio Law Abs. 394.

It is true that before the adoption of the Revised Code, the section in question used the term "child or other relative" (Section 10504-73, General Code; Section 5971, Revised Statutes), and that the decision of the Supreme Court in the *Schaefer case, supra,* stressed that point, as shown by the following excerpt from the first paragraph of the syllabus:

"* * * the phrase 'other relative' should, in accordance with the maxim *noscitur a sociis,* be restricted to relationships of the character indicated by the associated word 'child,' and regarded as including those which are consanguineous, but excluding those which are affinitive merely."

At first blush it might appear that the *Schaefer case* does not apply to the present statute, Section 2107.52, Revised Code, which uses the term "relative," instead of "child or other relative." However, as pointed out in *Schuck* v. *Schuck, supra,* the change in wording between the General Code Section and the Revised Code Section was not intended to change the law. The Revised Code is merely a restatement of the previous law. See Section 1.24, Revised Code. Accordingly, the *Schaefer case* is as much the law under the present statute as it was under the former statutes.

The general rule is that the word "relative" in an antilapse statute is limited to persons related to the testator by consanguinity, and apparently it makes no difference whether the statute uses the term "child or other relative" or merely "relative." See 115 A. L. R. 444; 63 A. L. R. 2d 1195; 6 Bowe-Parker, Page on Wills (1962), Section 50.13; Atkinson, Wills (2d Ed. 1953), 779-780, Section 140.

I hold that the phrase, "relative of a testator," contained in Section 2107.52, Revised Code, does not include those "related" by affinity. Consequently, Clarise Long was not a "relative" of the testator, and her surviving children are not entitled to her share of the $2,000 bequest.

Inasmuch as the antilapse statute, cited above, does not govern, we must look to the common law to determine who is entitled to Clarise Long's share of the $2,000 bequest, which share amounts to $500.

As already noted, the gift is of an aggregate sum, to be divided equally between four named legatees, three of whom compose a "class," namely, the children of Ed Kortan. If this constituted a class gift, those members of the class who survived the testator would share the whole $2,000.00 equally, and Clarise Long's share would not lapse. 56 Ohio Jurisprudence 2d, Section 857; *Jewett* v. *Jewett*, 21 C. C., 278, 12 C. D., 131 (1900), affd, 67 Ohio St. 541; *Mather* v. *Copeland* (Com. Pl. 1898), 5 N. P. 151, 7 O. D. (N. P) 257; Bensing, The Ohio Anti-Lapse Statute, 28 Univ. of Cincinnati L. Rev. (1959), 1, at p. 3; 4 Bowe-Parker, Page on Wills (1961), Section 35.15, p. 540.

However, the $2,000 bequest is not a class gift, but rather a gift to individuals. In the first place, only three of the four beneficiaries are in the same class. But even overlooking that point, and treating the bequest as though all four of the named individuals were of the same class, the bequest is still to individuals and not to a class.

The case of *Jewett* v. *Jewett, supra,* is in point. The bequest in that case was "to my brothers," naming each of them, "share and share alike." At page 282, the court said:

"It seems obvious to us that this is a gift to them as individuals, and not as a class. It is true that they were a class— but the gift to them is in words to them as individuals, and the rule of law is, that when the gift is made to persons designated by name, that is individually; it is a gift to them as individuals, and not as a class, even though the persons designated may constitute a class * * *"

The *Jewett case* was followed in *Bishop* v. *Jones* (App. 1929), 7 Ohio Law Abs. 484. See, also, *Starling's Executor* v. *Price* (1864), 16 Ohio St. 29.

The Ohio decisions are in line with the general rule. Of course, a will may contain other language manifesting an intention to create a class gift even though individuals are named. However, this is unusual, and no such language appears in Mr. Novak's will. In the absence thereof, the designation of the beneficiaries by name is regarded as showing an intention to

make individual gifts rather than a class gift. And when the group of beneficiaries are named and the number of them given, as occurred in Mr. Novak's will ("and his three children Claire, Ruth and William") the intent to make gifts to individuals, rather than a gift to a class, is even more apparent. See 75 A. L. R. 773; 105 A. L. R. 1394; 4 Bowe-Parker, Page on Wills (1961), Section 35.4.

The bequest of $2,000 being to four individuals and not to a class, the death of Clarise Long resulted in the lapsing of her share, namely, $500. *Jewett* v. *Jewett, supra*; *Bishop* v. *Jones, supra*; *In re King* (1910), 200 N. Y. 189, 93 N. E. 484, 34 L. R. A. (N. S.) 945; Bensing, The Ohio AntiLapse Statute, 28 Univ. of Cincinnati L. Rev. 1 (1959); 56 Ohio Jurisprudence 2d, Wills, Section 851; 4 Bowe-Parker, Page on Wills (1961), Section 35.15.

If there is a general residuary clause, which there is in Mr. Novak's will ("All the rest and residue of my estate"), lapsed legacies become a part of the residuum, in the absence of language showing a contrary intention. 56 Ohio Jurisprudence 2d, Wills, Section 868; 10 A. L. R. 1522; 4 Bowe-Parker, Page on Wills (1961), Section 33.50; 6 Bowe-Parker, Page on Wills, Section 50.16, p. 94 (1962); Bensing, The Ohio Anti-Lapse Statute, 28 Univ. of Cincinnati L. Rev. 1, at pp. 2-3 (1959). I will not burden this opinion by listing the many Ohio cases. Most, if not all, of them are cited in 56 Ohio Jurisprudence 2d, Wills, Section 868, and at pages 2 and 3 of the Bensing article cited supra. Also, see my report and opinion in *Kellogg* v. *Campbell*, No. 663248, March 3, 1965.

Although the $2,000 bequest made in the codicil appears as a substitution for part of the will's residuary clause, it is obviously not in itself a part of the residuary clause. Rather it is a general (pecuniary) legacy of a definite amount. Such a "nonresiduary" bequest will be treated as a separate entity even though it chances to be located in the same clause which disposes of the residuum. See 4 Bowe-Parker, Page on Wills (1961), Section 33.49, p. 376.

For the reasons given, I hold that the $500 bequest to "Claire" (Clarise Long) lapsed, and that it becomes part of the residuum of the estate.

The other questions presented are similar to one another

and relate to the identity of the residuary legatees. The three named legatees are:

"a. Old Peoples Home of West 18th Place, Chicago, Ill.

"b. Mother Mary Mission of Phenix City, Alabama

"c. Marbetena Fathers of Depere, Wisconsin"

From the evidence it appears that each of these legatees is erroneously described. I will consider each situation separately.

By way of an approach to the general problem, the following observations by Professor Bowe and Parker are helpful.

"Misnomers appear quite frequently in devises to a corporation; usually to a charitable corporation. The real names of such corporations are often never used and never known by people generally, and many testators do not feel the need, in preparing a will, of getting the real name of the proposed beneficiary. They prefer to guess. Hence the number of adjudicated cases upon this point.

"Where a corporation is given an erroneous name in a will, such a mistake will not avoid the gift if it is possible by means of the name used, or by admissible extrinsic evidence, to identify the corporation intended as beneficiary with sufficient certainty."

The above is from 4 Bowe-Parker, Page on Wills (1961), Section 34.39. We now turn to the individual beneficiaries.

*a. Old Peoples Home of West 18th Place, Chicago, Ill.*

The evidence indicates that there was no home for the aged named Old Peoples Home at the address given. However, a St. Benedict Home for the Aged was located at 1718 West 18th Place, although some years ago it moved to 6930 West Touhey Avenue, Niles, Illinois, where it is presently located. No other home for the aged was ever located on 18th Place. Moreover, the St. Benedict Home advertised in newspapers catering to Bohemian and Polish people, and Mr. Novak was Bohemian.

The situation is strikingly similar to that in *Reilly* v. *Union Protestant Infirmary of City of Baltimore* (1898), 87 Md. 664, 40 A. 894. In that case the testatrix made a bequest to the "Presbyterian Infirmary on Division street in Baltimore city." Apparently there was no such organization as the Presbyterian infirmary, but there was an organization named the

Union Protestant Infirmary, which operated an infirmary on Division Street. The court held that this latter organization was entitled to the bequest. The court pointed out that there was one and only one infirmary on Division Street, and that clearly the testatrix intended that one to be the beneficiary. At page 896 of 40 Atlantic, the court said: "The infirmary on Division street was obviously intended to be the beneficiary; and whether it be called Union Protestant or Presbyterian is wholly immaterial if it be apparent that it—the infirmary, whatever its name—was meant by the language used."

And the Bowe-Parker book states that if the corporation can be identified by its location, the misnomer will not invalidate the gift. 4 Bowe-Parker, Page on Wills (1961), Section 34.39.

I am satisfied that Mr. Novak's intention was to make this bequest to the old peoples' home of West 18th Place, Chicago. That old peoples' home was known as St. Benedict Home for the Aged. The fact that the testator did not use the correct name should not prevent us from carrying out his evident intent.

*b. Mother Mary Mission of Phenix City, Alabama.*

The evidence shows that an organization known as the Mother Mary Missions, located in Phenix City, Alabama, is operated by the Salvatorian Fathers, Salvatorian Center, Wisconsin. There is really no difficulty in this instance. Certainly the discrepancy between the word "Mission" in the Will, and "Missions" in the correct name, is of no significance. And there *is* in existence a Mother Mary Missions of Phenix City, Alabama. The fact that it is operated by a parent organization does not affect its identity as the intended beneficiary.

I hold that the Mother Mary Missions of Phenix City, Alabama, operated by the Salvatorian Fathers, Salvatorian Center, Wisconsin, is the beneficiary of Item 6, b, of the will.

*c. Marbetena Fathers of Depere, Wisconsin.*

The evidence indicates that there is no such organization as the Marbetena Fathers of Depere, Wisconsin. However, there is an organization named the Norbertine Fathers, located in DePere or West DePere, Wisconsin. Mr. William Kortan testified that he and Mr. Novak had talked about the Norbertine Fathers and had made donations to that organization during

Mr. Novak's life. He testified further that Mr. Novak was an old man when he made his will, and was probably confused about the name.

In connection with Item 6, a, of the will, I referred to *Reilly* v. *Union Protestant Infirmary of City of Baltimore* (1898), 87 Md. 664, 40 A. 894, where the name of the street was given, together with an erroneously named infirmary, and the court gave the bequest to an infirmary located on that street. In the *Reilly* case there was also a bequest to the Home Mission of the Presbyterian Church of Baltimore. No such organization was in existence, but there was an organization called The Committee of the Home Mission of the Presbytery of Baltimore, and the court held that it was the intended beneficiary. Said the court, at page 896 of 40 Atlantic:

"She (the testatrix) has misdescribed the legatee, as in the case of the infirmary. That misdescription will no more defeat her benevolent purposes in this instance than in the other, because in each her intention is perfectly obvious and apparent."

From the evidence before me, I reach the conclusion that the organization known as the Norbertine Fathers of DePere (or West DePere), Wisconsin, is the intended beneficiary under Item 6, c.

### Conclusions of Law

1. By the death of Clarise Kortan Long prior to the death of the testator, her share in the $2,000 bequest in Item 1 of the first codicil (namely, $500) lapsed and became a part of the residuary estate.

2. Testator's residuary estate is to be distributed, share and share alike, among the following organizations: St. Benedict Home for the Aged, 6930 West Touhey Avenue, Niles, Illinois; Mother Mary Missions of Phenix City, Alabama, Operated by the Salvatorian Fathers, Salvatorian Center, Wisconsin; Norbertine Fathers, St. Norbet Abbey, DePere, Wisconsin.