Evans, Admr., *v.* Cass et al.

[Cite as Evans v. Cass (1970), 23 Ohio Misc. 300.]

(No. 747429—Decided April 6, 1970.)

Probate Division, Common Pleas Court of Cuyahoga County.

*Messrs. Hahn, Loeser, Freedheim, Dean & Wellman,* for plaintiff.
*Messrs. McNelis & McNelis,* for defendant King.
*Messrs. Payne & Payne,* for defendants Olivegene Nicely et al.

*Messrs. Schneider, Smeltz, Huston & Bissell,* for defendants Ellsworth Cass et al.

*Mr. Francis X. Feighan,* for trustee for suit for unknown heirs.

ANDREWS, Chief Referee. This is an action to construe the will of Harold J. Cass, who died on March 1, 1969, and was not survived by a spouse or by lineal descendants.

Items 5 and 9 of the will read as follows:

"5. I give, bequeath and devise to the following, the sum of money set forth opposite his or her name:

| | |
|---|---|
| Helen Evans | $1,000.00 |
| Edith Pierce | $500.00 |
| Robert King | $500.00 |
| Ellsworth Cass | $2,000.00 |
| Luella Burgess | $2,000.00 |
| William Cass | $2,000.00 |
| Bessie Vale | $6,000.00 |
| Jean Fierbaugh | $6,000.00 |

"If any one of the above or all of them should predecease me, then and in that event, the sum set forth opposite from the name of the one so predeceasing me shall be distributed to the heirs of his or her body, per stirpes."

"9. * * * I give, devise and bequeath all the rest and remainder of my estate to the heirs set forth in Item 5. above, per stirpes."

The first three legatees in Item 5 (Helen Evans, Edith Pierce, and Robert King) are two nieces and a nephew, respectively, of the testator. Their mother, Elizabeth Cass King, was the testator's sister. She died before the making of the will. She left one other surviving child, Dorothy King, who is under guardianship and is not mentioned as a beneficiary in the will.

Ellsworth Cass, the next beneficiary named in Item 5, is the testator's brother.

Luella Burgess, a sister of the testator, was alive when he made his will, but predeceased him. She is survived by two children, Winifred Travis and Mary Chriest.

William Cass is the only child of the testator's brother, Herbert, who died before the making of the will.

Bessie Vale was a sister of the testator's deceased first wife. Although living when the testator made his will, Bessie Vale predeceased him, leaving four surviving sons, John, Verner, Donald, and Eugene, and two grandchildren, Olivegene Nicely and Richard W. Nicely, children of her deceased daughter, Olive Mae Vale Nicely.

Jean Fierbaugh, also a sister of the testator's first wife, was living when the will was made, but died before the testator, leaving no known issue.

All the living persons named above are adults.

Plaintiff, designated in the petition as "administrator," seeks a construction of the will and the direction of this court in several particulars.

In question (A) he wants to know whether or not the bequest of $6,000.00 to Jean Fierbaugh under Item 5 of the will lapses by reason of her predeceasing the testator without issue, and, if so, whether it passes under the residuary clause or under the statutes of descent and distribution.

The answer is that the bequest lapses and becomes a part of the residuary estate. See R. C. 2107.52; *Kovar* v. *Kortan* (1965), 3 Ohio Misc. 63; *Kellogg* v. *Campbell* (1965), 3 Ohio Misc. 27. Inasmuch as Jean Fierbaugh was a relative of the testator by affinity, not by consanguinity, she is not covered by the anti-lapse statute cited *supra*. In like manner, any share which she might have had in the residue lapses and passes to the other residuary legatees. *Commerce National Bank* v. *Browning* (1952), 158 Ohio St. 54. See Bensing, The Ohio Anti-Lapse Statute, 28 U. Cin. L. Rev. 1 (1959).

Plaintiff's question (B) asks whether the phrase "the heirs set forth in Item 5 above," as used in Item 9 means:

"(1) only those persons named in Item 5 who are 'next of kin' of the testator under the Ohio laws of descent and distribution, or

"(2) all of those persons named in Item 5 regardless of whether they are next of kin * * *."

Actually, a person has no heirs until he dies. How-

ever, where the word "heirs" is used in connection with such words as "aforesaid," "named above," and the like, referring to previously named or designated persons, courts have construed the word "heirs" as including heirs apparent, or even potential or presumptive heirs. See, for example, *Townsend* v. *Townsend* (1874), 25 Ohio St. 477; *McKelvey* v. *McKelvey* (1885), 43 Ohio St. 213; 4 Bowe-Parker, Page on Wills Sec. 34.6 (1961).

Applying this construction to the present case, the first six people named in Item 5, all of whom are heirs apparent, come within the language used in Item 9. As it turned out, all of them except Luella Burgess became actual heirs of the testator.

Bessie Vale and Jean Fierbaugh were in an entirely different category. They were not even potential heirs. R. C. 2105.06, the "statute of descent and distribution," does not include sisters-in-law. To bring these two beneficiaries of Item 5 into the "confines" of Item 9, it will be necessary to construe the word "heirs" in the phrase under discussion as meaning "legatees" or "beneficiaries" or "persons," or some similar appellation.

May this be done ever, and, if so, should it be done here? Would it so stretch the word "heirs" as to constitute a rewriting of the will, as counsel for the Cass group contends, or is it the proper interpretation under the circumstances?

There are many decisions interpreting the word "heirs" as meaning "legatees," "beneficiaries," and so forth, when the word appears in a phrase similar to the one in Item 9, referring back to previously named persons. See, for instance, *Hoke* v. *Jackman* (1914), 182 Ind. 536, 107 N. E. 65; *Jennings* v. *Jennings* (1945), 299 Ky. 779, 187 S. W. 2d 459; *In re Hull's Will* (Surr. Ct. 1900), 63 N. Y. Supp. 725; and see Annotation, 70 A. L. R. 581.

On the other hand, there are authorities limiting the word "heirs" in such a phrase to heirs apparent or potential heirs. See, for example, *Jacobs* v. *Prescott* (1906), 102 Me. 63, 65 A. 761 (where, however, the phrase was "my heirs by my family herein named"); *In re Allwood's Estate* (Prerog. Ct. 1935), 118 N. J. Eq. 172, 177 Atl. 861,

*aff'd mem.* (Ct. of Errors and Appeals 1935), 119 N. J. Eq. 87, 181 Atl. 67 (court having some doubts, but feeling bound by precedent); *Porter's Appeal* (1863), 45 Pa. 201; *In re Estate of Johnson* (1929), 199 Wis. 154, 225 N. W. 818; and see the above-cited annotation, 70 A. L. R. 581.

The general principle is that when the technical term "heirs" is used, there is a presumption that it is employed in a technical sense, but that it is to be construed as "legatees" or "devisees" when such a construction is necessary to effectuate the apparent purpose of the testator. See 70 A. L. R. 581, 588; 56 Ohio Jurisprudence 2d, Wills, Sec. 609, p. 144.

Although the principle seems clear enough, its application is difficult. The variations in language and accompanying facts in will construction cases make it virtually impossible to find two cases exactly alike. Moreover, it is often impossible to estimate the influence of a particular fact upon the court's conclusion.

For instance, in some cases where the court has interpreted the word "heirs" as meaning "legatees," the court has observed that the will was drawn by a layman, who cannot be expected to have a lawyer's knowledge of technical words. *E. g., In re Hull's Will, supra.*

In like manner, some of the courts interpreting the word "heirs" strictly, have pointed out that an interpretation which included all the previously named legatees, would result in the inclusion of servants or others to whom comparatively small pecuniary bequests were made. In *Porter's Appeal, supra,* for example, the majority of the court could not persuade themselves that the testator meant to make his coachman, to whom he gave a $300 legacy, his "heir" also, and to entitle him to a share in the residuary estate, which "absurd consequence" would follow from construing the words to embrace all the previously named legatees.

The puzzle in appraising the cases is often whether the absence of one of several factors would have changed the decision.

There is a good example in our own state in the leading case of *Townsend* v. *Townsend* (1874), 25 Ohio St. 477.

There were a number of pecuniary legacies and some specific legacies. The court divided the pecuniary and specific legatees into five classes:

1. The surviving husband of the testatrix.
2. Her collateral blood relatives—the Wests.
3. The blood relatives of her first husband—the Kuglers.
4. Persons not related to her by either blood or marriage.
5. Religious and benevolent institutions.

The residuary clause provided that the balance of the estate was to be equally divided "among all the heirs herein named."

Technically, the husband was the sole heir, or, to be more accurate, heir apparent. However, the court decided that the first two classes were entitled to share in the residuary estate, thus extending the meaning of the word "heirs," as there used, to include potential heirs. Said the court:

"We think the meaning of the will * * * is to divide the residuum, share and share alike, among all those persons named therein who might, under some circumstances, have stood in the relation of heirs to the testatrix." 25 Ohio St. at 489.

Referring to the third class, namely, the blood relatives of testatrix' first husband, the court stated:

"* * * we are not authorized by anything in the context to extend the meaning of the word so as to embrace persons who, under the law, could not in any contingency have succeeded to the estate as heirs of the deceased." 25 Ohio St. at 488.

Accordingly, the court excluded the third class (the Kuglers), as well as the fourth and fifth classes, from participation in the residuary estate.

At first glance, this may look as though the court decided that people related to a testator by affinity only, can never be included within a phrase such as "the aforesaid heirs." But note that in the above quotation the court included the words "by anything in the context."

And the opinion continues:

"* * * Indeed, there is no sense in which the testatrix could have used the word 'heirs,' except as a substitute for 'legatees,' that would bring this class of persons named in the will within the intention of this clause. And if upon the whole will, and in the light of extrinsic circumstances, we were constrained to substitute 'legatees' for 'heirs,' then, those legatees of the fourth and fifth classes above named would be let in—to wit, persons not related to the testatrix by either blood or marriage, and all the benevolent and religious associations named in the will. *For such construction or conclusion no one contends*; and we think it would be alike contrary to the actual and the legal intention of the testatrix." 25 Ohio St. at 489. (Emphasis added.)

In an earlier case, in a factual situation which involved only blood relatives, the court, in holding that the word "heirs" was used by the testator as the equivalent of "legatees," said that the question is not what the word "in strict propriety" means, but what the testator meant by it. *Collier* v. *Collier* (1854), 3 Ohio St. 369.

There are other Ohio cases dealing with the "flexible" meaning of the word "heirs," but none is exactly in point, and nothing is to be gained by discussing them. See, for example, *Moon* v. *Stewart* (1913), 87 Ohio St. 349 (such meaning should be given word "heirs" as testatrix evidently intended it should have).

Does the *Townsend decision* prohibit us from extending the word "heirs" so as to include the testator's sisters-in-law as residuary legatees?

The instant case differs from *Townsend* in two important respects. First, there are no "fourth" or "fifth" classes of legatees, as there were in *Townsend*. Secondly, in *Townsend* the long list of pecuniary and specific legatees included relationships as well as names, whereas, in the present case, nothing appears but the names. In my opinion, we are not precluded by *Townsend* from including the sisters-in-law if the testator manifestly intended to include them.

In determining his intention, we must bear in mind the

general principle of Ohio law that if there is a doubt as to the sense in which the testator used the word "heirs," it must be construed in its technical sense. *Holt* v. *Miller* (1938), 133 Ohio St. 418; *Casey* v. *Gallagher* (1967), 11 Ohio St. 2d 42.

It is clear to me, however, that Mr. Cass intended the residuary clause to embrace all those persons named in Item 5. It would be a strained construction to hold that he intended to separate the named beneficiaries into classes, some of whom would be entitled to share in the residue, and others not. Had the intention been to limit the residuum to the first six beneficiaries, it would have been easy to find language expressing such an intention. The phrase "the heirs set forth in Item 5 above" clearly refers to all the people named. No "heirs" are "set forth" as such, but only the list of named and otherwise undesignated beneficiaries.

The will was drafted by a lawyer, but under the circumstances I do not think that undue emphasis should be placed upon his use of the word "heirs." This is especially so because, in addition to the present ambiguity, there are other imperfections in draftsmanship.

I hold that Item 9 was intended to include all the beneficiaries named in Item 5.

Plaintiff asks next:

"(C) If the phrase 'the heirs set forth in Item 5 above' is held by this Court to include Bessie Vale, then does the portion of the residue thereby bequeathed to Bessie Vale lapse by reason of her having predeceased the testator and by reason of the absence of any savings clause in said Item 9 of the Will?"

Without doubt unless there is a "savings clause" applicable to Item 9, Bessie Vale's portion of the residue lapses by reason of her prior death. Like Jean Fierbaugh, and unlike Luella Burgess, she is not a "relative" within the meaning of the anti-lapse statute, R. C. 2107.52.

It was suggested in oral argument that Item 9 incorporates the whole of Item 5, including the provision for substitutional gifts in case of the death of a legatee. Wheth-

'er the language of Item 9 succeeds in such an incorporation is, to say the least, questionable.

However, in my opinion, Item 9, standing alone and without any incorporation of Item 5, is sufficient to bring about the same result.

We have held that the reference in Item 9 is to all the legatees named in Item 5. Thus, in effect, Item 9 bequeaths the "rest and remainder" to eight named legatees, "per stirpes."

These eight legatees do not take in a representative capacity, but are the primary beneficiaries. The words "per stirpes" are not ordinarily used in connection with primary beneficiaries, but rather, as in Item 5, with substitutional beneficiaries. See Annotation, 16 A. L. R. 15, 32; and see *Rings* v. *Borton* (1923), 108 Ohio St. 280, 284 (essential of taker *per stirpes* is that he takes in representative capacity and stands in place of a deceased ancestor).

Although the words "per stirpes" are ineptly used, I do not think that we have a right to disregard them, especially when we consider the general scheme of Items 5 and 9. We are guided to a solution of the problem by no less an authority than the Restatement of Property.

Although the applicable portion of the Restatement is dealing in general with class gifts, our situation is analogous to that of a class gift where membership in the class has been ascertained. The example given in the Restatement is "to the children of B per stirpes." As stated by the editors, the phrase "per stirpes" in this setting has no effect upon the primary gift, but "regulates the distribution of the gift which is substituted, *by virtue of the presence * * * of the term 'per stirpes,'* for the share of a child of B who dies prior to distribution." (Emphasis added.)

Hence, continues the text, if B's descendants consist of one child and two grandchildren who are the descendants of a deceased child of B, the property is divided into halves, one of which goes to B's child and the other in equal shares to the two grandchildren as the representatives of their deceased parent. 3 Restatement, Property, Section 300,

Comment *f*. And see, to the same effect, Annotation, 78 A. L. R. 1385, 1394, citing *Rhode Island Hospital Trust Co.* v. *Shaw* (1929), 50 R. I. 78, 145 A. 98.

Applying the above principles to the instant case, the answer to plaintiff's question (C) is that the portion of the residue bequeathed to Bessie Vale will be distributed to her issue, per stirpes.

Counsel for the Cass group argues that the "per stirpes" phrase goes back to the testator's brothers and sisters as the "roots," and that, consequently, Helen Evans, Edith Pierce, and Robert King divide what presumably would have been bequeathed to their mother had she been alive when the will was made.

Since the persons named above are three of eight named primary beneficiaries, I do not believe that, technically, this is a "per stirpes" situation.

Nevertheless, it is manifest that the testator intended such a division among these relatives, and I agree with counsel that it should be made. Moreover, the matter is not in dispute.

Question (E) of the petition asks:

"Should distribution of the residue to the persons entitled thereto be made per capita or in the same proportion as the specific bequests have been made in Item 5 of the Will?"

Actually the bequests referred to are "general" rather than "specific" bequests, because they are merely for a designated amount of money, but this inaccuracy does not affect the answer.

Here again, a few clarifying words in the drafting would have made a construction unnecessary.

There is a presumption that a testator intends to make equal distribution among those who have equal claims upon his bounty. 56 Ohio Jurisprudence 2d, Wills, Section 644; 3 Restatement, Property, Section 243, Comment *f*. The presumption is applicable here, and even stronger than usual because the Vale descendants do not have equal claims upon the testator's bounty with his blood relatives.

Naturally, the presumption of equality may be over-

come by a sufficient manifestation of a contrary intent. 3 Restatement, Property, Section 243, Comment *f*; 56 Ohio Jurisprudence 2d, Wills, Section 644; *Snyder v. Snyder* (App. 1949), 56 Ohio Law Abs. 92.

There is no language in Item 9 which in any way tends to overcome the presumption.

The fact that Bessie Vale is given three times as much in Item 5 as the testator's own brother and sister is no indication that she was to get three times as much of the residue. Even where language is subject to two possible interpretations, the one resulting in equality will be adopted. *Luscher v. Luscher* (1948), 308 Ky. 677, 215 S. W. 2d 581. And here there is nothing to interpret.

I hold that there is nothing in the will or surrounding circumstances to overcome the presumption of equality in the distribution of the residue, bearing in mind, however, what has previously been said about the shares of Helen Evans, Edith Pierce, and Robert King.

CONCLUSIONS OF LAW

1. I will not burden this opinion by a repetition of the decisions made on the various points. As a consequence of those decisions, the residuary estate is to be distributed as follows:

| | | |
|---|---|---|
| Helen Evans | one fifteenth | (1/15) |
| Edith Pierce | one fifteenth | (1/15) |
| Robert King | one fifteenth | (1/15) |
| Ellsworth Cass | one fifth | (1/ 5) |
| Winifred Travis | one tenth | (1/10) |
| Mary Chriest | one tenth | (1/10) |
| William Cass | one fifth | (1/ 5) |
| John W. Vale, Jr | one twenty-fifth | (1/25) |
| Verner D. Vale | one twenty-fifth | (1/25) |
| Donald R. Vale | one twenty-fifth | (1/25) |
| Eugene C. Vale | one twenty-fifth | (1/25) |
| Olivegene Nicely | one fiftieth | (1/50) |
| Richard W. Nicely | one fiftieth | (1/50) |

2. Dorothy King takes nothing by the will or by law.

3. Costs, expenses, and attorneys' fees are chargeable to the estate.