# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

**FILED**

September 17, 1997

**Cecil W. Crowson**
**Appellate Court Clerk**

CHRISTOPHER JACOBSEN and )
JEFFREY JACOBSEN, )
Beneficiaries of the Estate of )
Edna M. Nissen, )
)
       Plaintiffs/Appellees, )  Williamson Chancery
)  No. P-94-1236
VS. )
)  Appeal No.
RUTH FLATHE, in her capacity as )  01A01-9511-CH-00510
Executrix of the Estate of )
Edna M. Nissen and in her )
Individual Capacity as a )
Beneficiary of the Estate of )
Edna M. Nissen, )
)
       Defendant/Appellant. )

APPEAL FROM THE CHANCERY COURT FOR WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE

THE HONORABLE HENRY DENMARK BELL, JUDGE

For the Plaintiff/Appellee:               For the Defendant/Appellant:

M. Bradley Gilmore                  G. Thomas Nebel
Christina Norris                      John B. Carlson
Parker, Lawrence, Cantrell & Dean     Williams & Associates
Nashville, Tennessee               Nashville, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves an intrafamily dispute over the meaning of an elderly widow's will. After the will was admitted to probate in the Chancery Court for Williamson County, the sons of one of the legatees who had predeceased the testator filed a petition for judicial construction asserting that they were entitled to receive their mother's share under the antilapse statute. The trial court granted a summary judgment in the sons' favor. On this appeal, the estate's personal representative, who is also a legatee, asserts that the will should be construed to give her the predeceased legatee's share. We have determined that the trial court correctly decided that the gift to the deceased legatee did not lapse and, therefore, affirm the summary judgment.

## **I.**

Edna M. Nissen was a widowed homemaker who lived in Williamson County after her husband's death in the mid-1970's. At the age of ninety-five, she retained a lawyer to prepare her will. The resulting will, which Ms. Nissen executed on November 6, 1989, was a conventional two-and-a-half page document directing in form language that her estate pay all her lawful debts, the expenses of her last illness, and her funeral expenses, as well as any estate or inheritance taxes. It lumped all her remaining real and personal property into her remainder estate and divided this estate as follows:

> All the rest and residue of the property which I may own at the time of my death, including but not limited to all my tangible personal property including automobiles, clothing, jewelry, and other articles of personal use or ornament, and all other property, real personal and mixed, of whatever kind and character and wheresoever situated, all of which constitute my residuary estate, I devise and bequeath as follows:
>
> (a)     Six-sixteenths (6/16) thereof to be divided equally among Patricia Laak, John Flathe, David Flathe, Georgia Flathe Wilson, Chris Jacobsen and Jeff Jacobsen, per capita.

(b)     Ten-sixteenths (10/16) thereof to be divided two-thirds (b) to Ruth Flathe and one-third (a) to Mary Jacobsen, per capita.

The will also named Ruth Flathe, one of Ms. Nissen's nieces living in Williamson County, as the personal representative of her estate.

Mary Jacobsen, the legatee who received a 16/48 interest in the residuary estate, was also Ms. Nissen's niece. She apparently lived in Wisconsin, as did her two sons, Jeffrey and Christopher Jacobsen, each of whom received a one-sixteenth interest of the residuary estate. Ms. Jacobsen predeceased Ms. Nissen on July 2, 1990.

Ms. Nissen realized later that her original will had not provided for the disposition of her interest in a testamentary trust created by her late husband.[1] Rather than preparing a new will, Ms. Nissen remedied this omission by executing a codicil to her will on July 27, 1990. The codicil distributed the corpus of Mr. Nissen's testamentary trust as follows:

> I specifically amend the SECOND paragraph of the above referenced Will dated the 6th day of November, 1989, to exercise the power of appointment granted to me under the Will of my late husband William Nissen dated October 10, 1975, in favor of the following:
>
> (a)     Six-sixteenths (6/16) thereof to Patricia Laak, John Flathe, David Flathe, Georgia Flathe Wilson, Chris Jacobsen and Jeff Jacobsen, to be divided equally among them per capita.
>
> (b)     Ten-sixteenths (10/16) thereof to be distributed to Ruth Flathe.

The codicil also ratified and republished Ms. Nissen's November 6, 1989 will and stated that the will and codicil constituted Ms. Nissen's last will and testament. Ms. Jacobsen was not mentioned in the codicil because she had died three weeks earlier.

---

[1] Mr. Nissen's testamentary trust provided that Ms. Nissen should receive the income earned on the trust's corpus during her lifetime and gave Ms. Nissen the power at her death to dispose of the corpus of the trust "to such person or persons or [her estate] in such manner and proportion as [she] shall appoint by a provision in her last will and testament referring to this power and purporting to exercise [it]."

Ms. Nissen outlived the codicil by approximately three-and-a-half years. She died of a stroke in February 1994 at the age of ninety-nine. In March 1994, Ms. Flathe filed Ms. Jacobsen's will for probate in the Chancery Court for Williamson County. In February 1995, Christopher and Jeffrey Jacobsen, filed a petition for construction of Ms. Nissen's will, asserting that they were entitled to their mother's 10/48 share of the original residuary estate. Ms. Flathe answered the petition by contending that Ms. Nissen had cut Ms. Jacobsen out of her will and, therefore, that Ms. Jacobsen's sons were only entitled to their specific bequests.

The Jacobsen brothers eventually brought the dispute to a head by moving for a summary judgment. On July 21, 1995, the trial court granted the summary judgment after finding that Ms. Nissen's will and codicil did not contain a latent ambiguity requiring the consideration of extrinsic evidence. The trial court held as a matter of law that Ms. Nissen's 1990 codicil did not alter the disposition of the residuary estate made in the 1989 will and that the operation of Tenn. Code Ann. § 32-3-105 (Supp. 1996) caused Ms. Jacobsen's 16/48 interest in Ms. Nissen's residuary estate to pass to her sons. Ms. Flathe has appealed this decision.

## II.

This will construction dispute was decided by summary judgment. Summary judgments are proper vehicles for deciding cases whose outcome hinges on legal issues alone because there are no disputed facts. *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993); *Bellamy v. Federal Express Corp.,* 749 S.W.2d 31, 33 (Tenn. 1988); *Foley v. St. Thomas Hosp.,* 906 S.W.2d 448, 452 (Tenn. Ct. App. 1995). They are accordingly uniquely suited to will construction cases because these cases generally involve only legal issues surrounding the proper interpretation of the language of the will itself. *Presley v. Hanks,* 782 S.W.2d 482, 487 (Tenn. Ct. App. 1989); *Estate of Robison v. Carter,* 701 S.W.2d 218, 220 (Tenn. Ct. App. 1985).

In most will construction cases, the testator's intent is determined by referring to the will itself. *Wright v. Brandon,* 863 S.W.2d 400, 402 (Tenn. 1993); *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn. 1991); *Daugherty v. Daugherty,* 784 S.W.2d 650, 653 (Tenn. 1990). Sometimes courts will consider evidence beyond the four corners of the will when the will contains a latent,[2] as opposed to patent,[3] ambiguity. *Stickley v. Carmichael,* 850 S.W.2d 127, 132 (Tenn. 1992); *Estate of Burchfiel v. First United Methodist Church,* 933 S.W.2d at 483.

We need not concern ourselves here with the possible factual disputes about circumstances beyond the four corners of the will itself since the present dispute involves a patent ambiguity. Thus, like the trial court, we will ignore all extraneous evidence[4] and focus only on the language of the will itself. The pivotal question in this case is whether the Jacobsen brothers have established, as a matter of law, that they are entitled to the benefit of the antilapse statute.

## III.

At common law, the property identified in a will to go to a legatee who predeceased the testator went instead to some other person named in the will or

---

[2]A latent ambiguity arises from an ambiguous state of external circumstances to which the words of the will refer. *Estate of Burchfiel v. First United Methodist Church,* 933 S.W.2d 481, 482 (Tenn. Ct. App. 1996). It generally involves a question of identifying a person or subject mentioned in the will. *Coble Sys., Inc. v. Gifford Co.,* 627 S.W.2d 359, 362 (Tenn. Ct. App. 1981). It stems from an uncertain reference in the document to things outside the will susceptible of explanation only by the development of facts elucidating what the testator was talking about. *See, e.g., Greer v. Anderson,* 36 Tenn. App. 507, 509-16, 259 S.W.2d 550, 551-53 (1953).

[3]A patent ambiguity stems from uncertainty in the language of the will itself, *In re Will of Bybee (Bybee v. Westrick),* 896 S.W.2d 792, 793 (Tenn. Ct. App. 1994); *Coble Sys., Inc. v. Gifford Co.,* 627 S.W.2d at 362, and is apparent on the face of the will. See 4 William J. Bowe & Douglas H. Parker, Page on the Law of Wills § 32.7 (rev. 3d ed. 1961) ("Page"). It involves an ambiguous term, *see Union Planters Corp. v. Harwell,* 578 S.W.2d 87, 92 (Tenn. Ct. App. 1978), that cannot be clarified by considering extraneous facts.

[4]For this reason, we must ignore the self-serving affidavits of Ms. Flathe and the lawyer who prepared Ms. Nissen's will and codicil concerning their versions of Ms. Nissen's testamentary intent. We must likewise ignore the affidavits of the Jacobsen brothers. Ms. Flathe cannot create a genuine factual dispute to stave off a summary judgment motion involving a patent ambiguity by presenting incompetent affidavits concerning Ms. Nissen's testamentary intent. *See Skinner v. Moore,* 940 S.W.2d 755, 758 (Tex. Ct. App. 1997).

passed as intestate property. *See Dixon v. Cooper,* 88 Tenn. 177, 182, 12 S.W. 445, 446 (1889). The courts held in these circumstances that the legacy lapsed because the deceased legatee no longer had the capacity or willingness to accept the gift. *Brice v. Horner,* 38 S.W. 440, 442 (Tenn. Ch. App. 1896). As a result of the common-law rule, the testamentary gift would not go to the heirs of the deceased legatee thereby often frustrating the testator's chosen distribution of the property.

Tennessee's antilapse statute was enacted in 1858 to cure the lapsed legacy problem by legally substituting related recipients for deceased recipients. David R. Foster, Note, *Testamentary Gifts of Future Interests: Is There an "Immediate" Problem with the Tennessee Antilapse Statute?,* 17 Mem. St. U. L. Rev. 263, 265-66 (1987). Now codified at Tenn. Code Ann. § 32-3-105, the statute provides:

> Whenever the devisee or legatee or any member of a class to which an immediate devise or bequest is made, dies before the testator, or is dead at the making of the will, leaving issue which survives the testator, the issue shall take the estate or interest devised or bequeathed which the devisee or legatee or the member of the class, as the case may be, would have taken, had that person survived the testator, unless a different disposition thereof is made or required by the will.

When a legatee predeceases a testator, the statute saves a testamentary gift by substituting the legatee's heirs for the legatee. *See, e.g., Weiss v. Broadway Nat'l Bank,* 204 Tenn. 563, 573-74, 322 S.W.2d 427, 431-32 (1959) (holding that the son of a predeceased legatee took his father's share "just as if [his name] had been inserted in the will by the testatrix herself"). The courts give the antilapse statute a liberal construction. *Brundige v. Alexander,* 547 S.W.2d 232, 234 (Tenn. 1976).

The antilapse statute, by its own terms, will not govern the distribution of a testamentary gift in cases where the testator expressly makes a different disposition of property by will. To defeat the operation of the antilapse statute, the will must contain plain and clear language indicating that the testator intended a different disposition of his or her property should a named beneficiary die first. *Estate of Renner,* 895 S.W.2d 180, 182 (Mo. Ct. App. 1995); *Royston v. Watts,*

842 S.W.2d 876, 879 (Mo. Ct. App. 1992). Where a will does not clearly indicate that the person who made it intended to disinherit a predeceased legatee in favor of a surviving legatee, the antilapse statute works to save the deceased legatee's gift for his or her heirs. *In re Will of Bybee (Bybee v. Westrick)*, 896 S.W.2d at 794.

## IV.

Ms. Flathe advances three arguments to support her assertion that Ms. Nissen's will contains plain and clear language demonstrating her intent that her bequest to Ms. Jacobsen would lapse if Ms. Jacobsen predeceased her. These arguments hinge on (1) the use of the term "per capita" in Paragraph 2(b) of Ms. Nissen's will, (2) the fact that the Jacobsen brothers were already provided for elsewhere in Ms. Nissen's will, and (3) the fact that the codicil excluded any mention of Ms. Jacobsen.

Each of these arguments requires us construe the terms of Ms. Nissen's will. In doing so, we must be guided by our obligation to see to it that Ms. Nissen's desires and intentions are given effect. *Wright v. Brandon,* 863 S.W.2d at 402; *Martin v. Taylor,* 521 S.W.2d 581, 584 (Tenn. 1975); *Presley v. Hanks,* 782 S.W.2d at 487. Since we are dealing here with a patent ambiguity, we must derive Ms. Nissen's intent from the four corners of her testamentary writings, *Fariss v. Bly-Block Co.*, 208 Tenn. 482, 487, 346 S.W.2d 705, 706 (1961), which include both her will and the 1990 codicil to her will. *Martin v. Taylor*, 521 S.W.2d at 584; *Fisher v. Malmo*, 650 S.W.2d 43, 46 (Tenn. Ct. App. 1983).

Because every word used by a testator in a will is presumed to have some meaning, *Daugherty v. Daugherty,* 784 S.W.2d at 653; *In re Estate of Jackson,* 793 S.W.2d 259, 261 (Tenn. Ct. App. 1990), we must, if possible, give effect to every provision, clause, term, or word used in the will. *Bell v. Shannon,* 212 Tenn. 28, 40, 367 S.W.2d 761, 766 (1963); *Beuchert v. Sigman,* 652 S.W.2d 347, 349 (Tenn. Ct. App. 1983). We must also give the technical words in the will their technical meaning because Ms. Nissen's will was drafted by a lawyer.

*Wright v. Brandon,* 863 S.W.2d at 402; *Daugherty v. Daugherty,* 784 S.W.2d at 653.

## A.
### THE USE OF THE TERM "PER CAPITA"

Ms. Flathe first argues that the use of the term "per capita" in conjunction with the bequest to Ms. Jacobsen clearly signifies that Ms. Nissen did not intend for Ms. Jacobsen's share of the estate to pass to her heirs if Ms. Jacobsen predeceased Ms. Nissen. We disagree. The term "per capita" has no application to specific bequests to named legatees. In the context of this particular will, it can be given effect only if it is construed to relate to substitutional gifts to substitute legatees in the event of the death of the primary legatee.

The term "per capita" appears twice in Ms. Nissen's will and once in her 1990 codicil. It first appears in Paragraph (a) of the residuary clause in conjunction with the bequest of six-sixteenths of the residuary estate to six named persons. The will directs that this six-sixteenths be divided "equally . . . per capita." This same usage appears in Paragraph (a) of the codicil. The term also appears in Paragraph (b) pertaining to the gifts to Ms. Flathe and Ms. Jacobsen. Paragraph (b) states: "Ten-sixteenths (10/16) thereof to be divided two-thirds (b) to Ruth Flathe and one-third (a) to Mary Jacobsen, per capita." This usage is not repeated in the codicil because the codicil was prepared after Ms. Jacobsen's death.

The terms "per capita" and "per stirpes" describe the mode of distributing an estate rather than the designation of the persons who will share in the estate. *Wright v. Brandon,* 863 S.W.2d at 403; *see also In re Estate of Walter (Bolin v. Walters),* 519 N.E.2d 1270, 1273 (Ind. Ct. App. 1988); *In re Estate of Winslow,* 934 P.2d 1001, 1006 (Kan. Ct. App. 1997); *In re Estate of Renner (Kirchner v. Buschling),* 895 S.W.2d 180, 182 (Mo. Ct. App. 1995). They relate to class gifts,[5]

_____

[5]A class gift is a gift to a group of persons who are not named, whose number may vary, and who have one or more characteristics in common. *Jennings v. Jennings,* 165 Tenn. 295, 301,
(continued...)

and ordinarily have no application to named legatees who are primary takers under a will. *In re Estate of Walters (Bolin v. Walters),* 519 N.E.2d at 1273; *In re Estate of Winslow,* 934 P.2d at 1006; *Evans v. Cass,* 256 N.E.2d 738, 743 (Prob. Ct. Cuyahoga County 1970).

Thus, it is technically inappropriate to use either the term "per capita" or the term "per stirpes" or a combination of the two terms to describe a specific bequest to a named legatee. In circumstances where these terms have been used in conjunction with a gift to named legatees who are primary beneficiaries, the courts have consistently construed the terms to apply to the substitutional gift to the substitute legatees in the event of the death of the primary legatee. *In re Estate of Luke,* 184 N.W.2d 42, 45 (Iowa 1971); *Johnson v. Swann,* 126 A.2d 603, 606 (Md. 1956); *In re Will of Griffin (Lowry v. Doss),* 411 So. 2d 766, 769 (Miss. 1982); *St. Louis Union Trust Co. v. Greenough,* 282 S.W.2d 474, 478 (Mo. 1955); *see also* 3 Restatement of Property § 300, cmt. f (1940).

Based on these precedents, there are three reasons why the term "per capita" cannot, as a matter of law, apply to Ms. Nissen's bequest of ten-sixteenths of her residuary estate to Ms. Flathe and Ms. Jacobsen. First, this gift is not to a class. Second, the gift is to persons who are specifically named in the will as primary legatees. Third, the will does not divide the ten-sixteenths interest equally between Ms. Flathe and Ms. Nissen as the technically correct use of the term "per capita" would require.[6]

The trial court appears to have concluded, as we have, that the term "per capita" cannot apply to Ms. Nissen's bequest to Ms. Flathe and Ms. Jacobsen.

_____

[5](...continued)
54 S.W.2d 961, 963 (1932); Page, §§ 35.1, at 488 & 35.4, at 495. A bequest is not to a class if (1) it is given to a certain number of named persons, (2) the share each of these persons will receive is certain, and (3) these shares do not depend on the number of persons in the class at some future time. Page, § 35.2, at 493. For examples of the correct use of "per stirpes" and "per capita," *see* 4 Tennessee Legal and Business Forms §§ 28:252 & 28:253 (1994).

[6]As used in a will, the term "per capita" connotes an equal division of the property among the legatees, each receiving the same share as the others, without regard to the principle of representation. Page, § 36.6, at 556; George W. Thompson, *The Law of Wills* § 317, at 477 (3d ed. 1947).

However, the trial court then disregarded the term as "meaningless surplusage." We find that this was error because the courts must endeavor to give effect to all the terms in a will. This goal can be accomplished by holding that the term "per capita" as it appears in Paragraph 2(b) of Ms. Nissen's will applies to the substitutional gift to the substitute legatees should either Ms. Flathe or Ms. Jacobsen predecease Ms. Nissen. Thus, especially in the absence of any other provision in the will dealing with lapsed gifts or predeceased legatees, the term "per capita" relates to the manner in which the Jacobsen brothers should divide their mother's 16/48 share of Ms. Nissen's residuary estate.[7]

## B.

### THE OTHER BEQUESTS TO THE JACOBSEN BROTHERS

Ms. Flathe also insists that Ms. Nissen must not have intended for the Jacobsen brothers to succeed to their mother's interest because Ms. Nissen made other provisions for them in her will. We find this argument unpersuasive. The fact that a testator has made a specific bequest of a portion of her residuary estate to an individual does not prevent that individual from succeeding to his or her parent's share of the estate by operation of law. In these circumstances, the additional share simply becomes an additional gift to the named individual.

## C.

### THE EFFECT OF THE CODICIL

Ms. Flathe's final assertion is that the omission of any mention of Ms. Jacobsen in the 1990 codicil is evidence of Ms. Nissen's desire to exclude the Jacobsen brothers from succeeding to their mother's interest in the residuary estate. This argument is equally unpersuasive because it overlooks two important

---

[7]The record contains no pleadings or proof that Ms. Jacobsen left any heirs other than Jeffrey and Christopher Jacobsen or that she had any other children who were deceased. However, the trial court's memorandum makes an entirely unexplained reference to "any deceased children of Ms. Jacobsen." As far as the present record shows, the interests of the heirs of Ms. Jacobsen's deceased children were not before the trial court. Accordingly, we have not addressed the rights of these persons, if they exist.

matters of substance. First, the property dealt with in the codicil was different from the property included in the will. Second, the codicil did not change any portion of the will and, in fact, expressly reaffirmed the bequests in the will.

We will not construe a codicil to alter the terms of a will any more than is necessary to give effect to the codicil. *Rogers v. Rodgers*, 53 Tenn. (6 Heisk.) 489, 499 (1871); *American Nat'l Bank & Trust Co. v. Mander*, 36 Tenn. App. 220, 226, 253 S.W.2d 994, 997 (1952). It is evident from the face of the will and the codicil that Ms. Nissen prepared the codicil to make a testamentary disposition of property she had overlooked when she prepared her will, not to eliminate or replace any other testamentary bequest she had already made.

Ms. Flathe offers no textual basis for construing Ms. Nissen's will to provide that the survivor of Ms. Flathe and Ms. Jacobsen should receive the other's portion of the residuary estate. It is not our role to guess at a testator's intentions based on what the parties suppose the testator might have intended but never put in writing. *In re Walker,* 849 S.W.2d 766, 768 (Tenn. 1993); *Martin v. Hale,* 167 Tenn. 438, 442, 71 S.W.2d 211, 212 (1934). Thus, we decline to infer that because Ms. Nissen dealt with the property covered by the codicil in one way, she meant to deal with all her other property in the same way. The actual terms of the will and codicil merely evince a decision to deal with different property differently.

## V.

We affirm the judgment and remand the case to the trial court for whatever other proceedings may be required. We tax the costs of this appeal to Ruth Flathe, as personal representative of Ms. Nissen's estate, and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:

_____
HENRY F. TODD, P.J., M.S.


_____
SAMUEL L. LEWIS, JUDGE